APPEAL,CLOSED,DLrecused

# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: <u>1:19–cv–00163–PB</u>

NH Lottery Commission v. US Attorney General et al
Assigned to: Judge Paul J. Barbadoro
 Related Case:  1:19–cv–00170–SM
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 02/15/2019
Date Terminated: 06/20/2019
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**NH Lottery Commission**                         represented by   **Francis Charles Fredericks**
                                                                  NH Attorney General's Office (Civil)
                                                                  Civil Bureau
                                                                  33 Capitol St
                                                                  Concord, NH 03301–6397
                                                                  603 271–1221
                                                                  Email: francis.fredericksjr@doj.nh.gov
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Anthony Galdieri (NHAG)**
                                                                  Office of the Attorney General (NH)
                                                                  Civil Bureau
                                                                  33 Capitol St
                                                                  Concord, NH 03301–6397
                                                                  603 271–1214
                                                                  Email: anthony.galdieri@doj.nh.gov
                                                                  *ATTORNEY TO BE NOTICED*

V.

**<u>Consol Plaintiff</u>**

**NeoPollard Interactive LLC**                     represented by   **Matthew D. McGill**
                                                                  Gibson Dunn & Crutcher LLP
                                                                  1050 Connecticut Ave, NW
                                                                  Washington, DC 20036
                                                                  202 955–3680
                                                                  Email: mmcgill@gibsondunn.com
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Michael A. Delaney**
                                                                  McLane Middleton
                                                                  900 Elm St
                                                                  PO Box 326

Manchester, NH 03105–0326
603 628–1248
Email: michael.delaney@mclane.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Theodore B. Olson**
Gibson Dunn & Crutcher LLP
1050 Connecticut Ave, NW
Washington, DC 20036
202 955–8500
Email: tolson@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas F. Casolaro**
Cleveland Waters & Bass PA
Two Capital Plaza
PO Box 1137
Concord, NH 03302–1137
603 229–1016
Email: casolaron@cwbpa.com
*TERMINATED: 05/01/2019*

**Consol Plaintiff**

**Pollard Banknote Limited**        represented by   **Matthew D. McGill**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael A. Delaney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Theodore B. Olson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas F. Casolaro**
(See above for address)
*TERMINATED: 05/01/2019*

V.

**Defendant**

represented by

**US Attorney General**
*other*
William Barr

Steven A. Myers
US Dept of Justice – Civil/Com'l
Litigation (L St)
1100 L St NW
Washington, DC 20530
202 305−8648
Email: steven.a.myers@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Matthew J. Glover
US Department of Justice (Civil, OAAG)
Civil Division, OAAG
950 Pennsylvania Ave, NW
RM 3127
Washington, DC 20530
202 307−1697
Email: Matthew.J.Glover@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**US Department of Justice**                    represented by   **Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J. Glover**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consol Defendant**

**US Attorney General**                        represented by   **Steven A. Myers**
*other*                                                         (See above for address)
William Barr                                                    *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J. Glover**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**US Department of Justice**                   represented by   **Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew J. Glover**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**USA**                                 represented by   **Steven A. Myers**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Matthew J. Glover**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**iDevelopment and Economic**           represented by   **Alain J. Ifrah**
**Association**                                          Ifrah, PLLC
                                                         1717 Pennsylvania Ave, NW; Ste 650
                                                         Washington, DC 20006
                                                         202 524–4140
                                                         Email: jeff@ifrahlaw.com
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Andrew J. Silver**
                                                         Ifrah, PLLC
                                                         1717 Pennsylvania Ave, NW; Ste 650
                                                         Washington, DC 20006
                                                         202 524–4140
                                                         Email: asilver@ifrahlaw.com
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Claude M. Stern**
                                                         Quinn Emanuel Urquhart & Sullivan LLP
                                                         555 Twin Dolphin Dr, 5th Fl
                                                         Redwood Shores, CA 94065
                                                         650 801–5000
                                                         Email: claudestern@quinnemanuel.com
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Demetrio F. Aspiras , III**
                                                         Drummond Woodsum
                                                         501 Islington St, Ste 2C
                                                         Portsmouth, NH 03801
                                                         603 433–3317
                                                         Email: daspiras@dwmlaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Derek L. Shaffer**
Quinn Emanuel Urquhart & Sullivan LLP
1300 I St NW, Ste 900
Washington, DC 20005
202 538–8123
Email: derekshaffer@quinnemanuel.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**State of New Jersey**                        represented by   **Avram D. Frey**
Gibbons PC
One Gateway Ctr
Newark, NJ 07102
973 596–4415
Email: afrey@gibbonslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gillian A. Woolf**
LeClairRyan
60 State St
Twenty Third Flr
Boston, MA 02109
857 305–4415
Fax: 617 502–5723
Email: gillian.woolf@leclairryan.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence S. Lustberg**
Gibbons PC
One Gateway Ctr
Newark, NJ 07102
973 596–4731
Email: llustberg@gibbonslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meghal J. Shah**
Gibbons PC
One Gateway Ctr
Newark, NJ 07102
973 596–4717
Email: mshah@gibbonslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas R. Valen**
Gibbons PC
One Gateway Ctr
Newark, NJ 07102
973 596−4885
Email: tvalen@gibbonslaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Michigan Bureau of State Lottery**          represented by    **Donald S. McGehee**
State of Michigan
Department of the Attorney General
1st Floor, Williams Bldg.
525 West Ottawa St.
Lansing, MI 48933
517 241−0210
Fax: 517−241−1074
Email: McGeheeD1@michigan.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark G. Sands**
State of Michigan
Department of the Attorney General
1st Floor, Williams Bldg.
525 West Ottawa St.
Lansing, MI 48933
517 241−0210
Fax: 517−241−1074
Email: sandsm1@michigan.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Melinda A. Leonard**
State of Michigan
Department of the Attorney General
1st Floor, Williams Bldg.
525 West Ottawa St.
Lansing, MI 48933
517 241−0210
Fax: 517−241−1074
Email: leonardm1@michigan.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter S. Cowan**

Sheehan Phinney Bass & Green PA
1000 Elm St
PO Box 3701
Manchester, NH 03105–3701
603 668–0300
Email: pcowan@sheehan.com
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery** | represented by | **A Michael Pratt** |

Pepper Hamilton LLP
3000 Two Logan Sq
18th and Arch St
Philadelphia, PA 19103–2799
215 981–4386
Fax: 800–861–4984
Email: prattam@pepperlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher B. Chuff**
Pepper Hamilton LLP
1313 N. Market St, Ste 5100
Wilmington, DE 19801
302 777–6547
Email: chuffc@pepperlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joanna J. Cline**
Pepper Hamilton LLP
3000 Two Logan Sq
18th and Arch St
Philadelphia, PA 19103–2799
215 981–4520
Email: clinej@pepperlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick J. Queenan**
Sheehan Phinney Bass & Green
1000 Elm St, 17th Flr
PO Box 3701
Manchester, NH 03105–3701
603 493–7628
Email: pqueenan@sheehan.com
*ATTORNEY TO BE NOTICED*

**Robert R. Lucic**

Sheehan Phinney Bass & Green PA
1000 Elm St
PO Box 3701
Manchester, NH 03105–3701
603 668–0300
Email: rlucic@sheehan.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Coalition to Stop Internet Gambling**

represented by **Brian W. Barnes**
Cooper & Kirk, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
220 202–9600
Email: bbarnes@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles J. Cooper**
Cooper & Kirk, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
220 202–9600
Email: ccooper@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**
Cooper & Kirk, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
220 202–9600
Email: dthompson@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**J. Joel Alicea**
Cooper & Kirk, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
220 202–9600
Email: jalicea@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney**
Wadleigh Starr & Peters PLLC
95 Market St

Manchester, NH 03101
603 669–4140
Email: mtierney@wadleighlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole Frazer Reaves**
Cooper & Kirk, PLLC
1523 New Hampshire Ave, NW
Washington, DC 20036
202 220–9600
Email: nreaves@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zaharias**
Wadleigh Starr & Peters PLLC
95 Market St
Manchester, NH 03101
603 206–7281
Email: szaharias@wadleighlaw.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**The National Association of Convenience Stores**

represented by **Brian W. Barnes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles J. Cooper**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David H. Thompson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**J. Joel Alicea**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Nicole Frazer Reaves**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen N. Zaharias**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/15/2019 | 1 | | NEW CASE/ COMPLAINT (No fee paid, USA or IFP) filed by NH Lottery Commission. (Attachments: # 1 Civil Cover Sheet, # 2 Summons – William Barr, Attorney General, # 3 Summons – US DOJ)(Galdieri (NHAG), Anthony) (Entered: 02/15/2019) |
| 02/15/2019 | 2 | | MOTION for Summary Judgment filed by NH Lottery Commission. Follow up on Objection on 3/18/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law Memorandum of Law in Support of Motion for Summary Judgment, # 2 Exhibit (Affidavit) Declaration of Charles McIntyre, # 3 Exhibit (Affidavit) Declaration of Anthony Galdieri, # 4 Attachment to Exhibit Exhibit 1 Memorandum Opinion September 20, 2011, # 5 Attachment to Exhibit Exhibit 2 Slip Opinion, # 6 Attachment to Exhibit Exhibit 3 January 15 2019 US DOJ memorandum)(Galdieri (NHAG), Anthony) (Entered: 02/15/2019) |
| 02/15/2019 | 3 | | MOTION Rule 57 Motion for Speedy Hearing filed by NH Lottery Commission. **HEARING REQUESTED.** Follow up on Objection on 3/1/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Galdieri (NHAG), Anthony) (Entered: 02/15/2019) |
| 02/15/2019 | 4 | | NOTICE of Attorney Appearance by Francis Charles Fredericks on behalf of NH Lottery Commission Attorney Francis Charles Fredericks added to party NH Lottery Commission(pty:pla).(Fredericks, Francis) (Entered: 02/15/2019) |
| 02/15/2019 | | | Initial Filing Fee paid: $ 400 (Credit Card), receipt number 14649017443 re: 1 Complaint – New Case. (bt) (Entered: 02/15/2019) |
| 02/15/2019 | | | Case assigned to Judge Paul J. Barbadoro. The case designation is: 1:19–cv–163–PB. Please show this number with the judge designation on all future pleadings. (bt) (Entered: 02/15/2019) |
| 02/15/2019 | | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE. (bt) (Entered: |

| | | | |
|---|---|---|---|
| | | | 02/15/2019) |
| 02/15/2019 | 5 | | Summonses issued electronically as to US Attorney General, US Department of Justice. **NOTICE: Counsel shall print and serve the summonses and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(bt) (Entered: 02/15/2019) |
| 02/20/2019 | 6 | | Potential CONSOLIDATION Notice. Cases 19−cv−163−PB and 19−cv−170−SM reference each other as related cases and may be consolidated. Objections to Consolidation due 4/1/2019.(ej) (Entered: 02/20/2019) |
| 02/21/2019 | | | NOTICE of Hearing. Telephone Conference set for 2/22/2019 11:00 AM before Judge Paul J. Barbadoro. The court will initiate the call.(js) (Entered: 02/21/2019) |
| 02/21/2019 | 7 | | AFFIDAVIT of Service of Summons as to US Attorney General, US Department of Justice filed by NH Lottery Commission. Served/Mailed on 2/21/2019. Answer Follow Up on 3/14/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Ex A Service on AG, # 2 Exhibit Ex B Service on AG in official capacity, # 3 Exhibit Ex C Service on US DOJ, # 4 Exhibit Ex D Service on US Attorney Office)(Fredericks, Francis) (Entered: 02/21/2019) |
| 02/21/2019 | 8 | | NOTICE of Attorney Appearance by Steven A Myers on behalf of US Attorney General, US Department of Justice Attorney Steven A Myers added to party US Attorney General(pty:dft), Attorney Steven A Myers added to party US Department of Justice(pty:dft).(Myers, Steven) (Entered: 02/21/2019) |
| 02/22/2019 | | | CASE RELATED NOTICE. As this case is related to 19−cv−170−SM, the court has invited the parties in that case to participate in the telephone conference set for Friday, February 22, 2019 at 11:00 AM.(js) (Entered: 02/22/2019) |
| 02/22/2019 | 9 | | **CONSOLIDATION ORDER. 19−cv−163−PB and 19−cv−170−SM are consolidated into one case. 19−cv−170−SM is statistically closed. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 02/22/2019) |
| 02/22/2019 | | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. TELEPHONE CONFERENCE held on 2/22/2019. Case is consolidated with 19−cv−170−SM. Parties to file a joint proposed briefing schedule within 7 days. (Court Reporter: Brenda Hancock) (Pltfs Atty: Francis Charles Fredericks, Anthony Galdieri, Matthew D. McGill, Nicholas F. Casolaro,) (Defts Atty: Steven A Myers, T. David Plourde)(Total Hearing Time: 45 minutes) (js) (Entered: 02/22/2019) |
| 02/22/2019 | 10 | | MOTION for Summary Judgment filed by NeoPollard Interactive LLC, Pollard Banknote Limited. **HEARING REQUESTED.** Follow up on Objection on 3/25/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law, # 2 Exhibit (Affidavit) – Declaration of Liz Siver, # 3 Exhibit (Affidavit) – Declaration of Douglas E. Pollard, # 4 Exhibit (Affidavit) – Declaration of Michael A. Delaney, # 5 Exhibit 1 to Delaney Decl. (2011 Opinion), # 6 Exhibit 2 to Delaney Decl. (2018 Exhibit 2 to Delaney Decl. (2018 Opinion)), # 7 Exhibit 3 to Delaney Decl. (Rosenstein Memo.), # 8 Exhibit 4 to Delaney Decl. (Senate Hearings), # 9 Exhibit 5 to Delaney Decl. (House Hearings))(js) (Entered: 02/22/2019) |

| 02/22/2019 | 11 | | MOTION Rule 57 Motion for Speedy Hearing filed by NeoPollard Interactive LLC, Pollard Banknote Limited. **HEARING REQUESTED.** Follow up on Objection on 3/8/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law, # 2 Proposed Order)(js) (Entered: 02/22/2019) |
|---|---|---|---|
| 02/25/2019 | 12 | | Emergency MOTION to Intervene as other filed by iDevelopment and Economic Association. Attorney Demetrio F. Aspiras, III added to party iDevelopment and Economic Association(pty:intv). Follow up on Objection on 3/11/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law in support of Motion to Intervene, # 2 Exhibit A – Complaint in Intervention)(Aspiras, Demetrio) (Entered: 02/25/2019) |
| 02/25/2019 | 13 | | Disclosure Statement by iDevelopment and Economic Association disclosing no parent company, no publicly traded company, and no merger agreement. (Aspiras, Demetrio) (Entered: 02/25/2019) |
| 02/25/2019 | 14 | | MOTION for A. Jeff Ifrah to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776361.) filed by iDevelopment and Economic Association. Follow up on Objection on 3/11/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of A. Jeff Ifrah, # 2 Proposed Order)(Aspiras, Demetrio) (Entered: 02/25/2019) |
| 02/25/2019 | 15 | | MOTION for Andrew J. Silver to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776372.) filed by iDevelopment and Economic Association. Follow up on Objection on 3/11/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of Andrew Silver, # 2 Proposed Order)(Aspiras, Demetrio) (Entered: 02/25/2019) |
| 02/25/2019 | 16 | | MOTION for Derek L. Shaffer to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776376.) filed by iDevelopment and Economic Association. Follow up on Objection on 3/11/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of Derek L. Shaffer, # 2 Proposed Order)(Aspiras, Demetrio) (Entered: 02/25/2019) |
| 02/25/2019 | 17 | | MOTION for Claude M. Stern to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776378.) filed by iDevelopment and Economic Association. Follow up on Objection on 3/11/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of Claude M. Stern, # 2 Proposed Order)(Aspiras, Demetrio) (Entered: 02/25/2019) |
| 02/25/2019 | | | ACTION REQUIRED – NOTICE Nonconforming Document re 14 MOTION for A. Jeff Ifrah to Appear Pro Hac Vice, 15 MOTION for Andrew J. Silver to Appear Pro Hac Vice, 16 MOTION for Derek L. Shaffer to Appear Pro Hac Vice, 17 MOTION for Claude M. Stern to Appear Pro Hac Vice. The documents fail to comply with LR 7.1– No statement of concurrence was included. File statement as addendum using the Other Documents/Addendum event and link filing(s) to document nos. 14, 15, 16, 17. The documents will remain on file. Please note that unless a document curing the defect is filed by |

| | | |
|---|---|---|
| | | the Notice of Compliance Deadline the matter may be referred to a judicial officer for appropriate action. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603–225–1475.Compliance Deadline set for 2/28/2019.(js) (Entered: 02/25/2019) |
| 02/25/2019 | | **ENDORSED ORDER RE** <u>**12**</u> **Emergency MOTION to Intervene.** *Text of Order: Any party that wishes to respond to the motion shall do so within 7 days.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 02/25/2019) |
| 02/26/2019 | <u>18</u> | Addendum/ to <u>14</u> MOTION for A. Jeff Ifrah to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776361.) *Statement of Concurrence* by iDevelopment and Economic Association. (Aspiras, Demetrio) (Entered: 02/26/2019) |
| 02/26/2019 | <u>19</u> | Addendum/ to <u>15</u> MOTION for Andrew J. Silver to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776372.) *Statement of Concurrence* by iDevelopment and Economic Association. (Aspiras, Demetrio) (Entered: 02/26/2019) |
| 02/26/2019 | <u>20</u> | Addendum/ to <u>16</u> MOTION for Derek L. Shaffer to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776376.) *Statement of Concurrence* by iDevelopment and Economic Association. (Aspiras, Demetrio) (Entered: 02/26/2019) |
| 02/26/2019 | <u>21</u> | Addendum/ to <u>17</u> MOTION for Claude M. Stern to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1776378.) *Statement of Concurrence* by iDevelopment and Economic Association. (Aspiras, Demetrio) (Entered: 02/26/2019) |
| 02/26/2019 | | **ENDORSED ORDER granting** <u>**14**</u> **Motion for A. Jeff Ifrah to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that A. Jeff Ifrah, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/8/2019.To access the online registration form, click** <u>**HERE**</u>. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click <u>HERE</u>.(js) (Entered: 02/26/2019) |
| 02/26/2019 | | **ENDORSED ORDER granting** <u>**15**</u> **Motion for Andrew J. Silver to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Andrew J. Silver, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/8/2019.To access the online registration form, click** <u>**HERE**</u>. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click <u>HERE</u>.(js) (Entered: 02/26/2019) |
| 02/26/2019 | | **ENDORSED ORDER granting** <u>**16**</u> **Motion for Derek L. Shaffer to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Derek L. Shaffer, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/8/2019.To access the online registration form, click** |

| | | | |
|---|---|---|---|
| | | | **HERE**. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 02/26/2019) |
| 02/26/2019 | | | **ENDORSED ORDER granting 17 Motion for Claude M. Stern to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Claude M. Stern, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/8/2019.To access the online registration form, click HERE**. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 02/26/2019) |
| 03/01/2019 | 22 | | TRANSCRIPT of Proceedings for In Chambers Telephone Conference held on February 22, 2019. Court Reporter: Brenda K. Hancock, Telephone # 603 225−1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90−day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 3/22/2019. Redacted Transcript Follow Up 4/1/2019. Release of Transcript Restriction set for 5/29/2019.(js) (Entered: 03/01/2019) |
| 03/01/2019 | 23 | | Joint Filing Regarding Scheduling by NH Lottery Commission, NeoPollard Interactive LLC, Pollard Banknote Limited (Attachments: # 1 Exhibit A − Deputy Attorney General Memorandum)(Delaney, Michael) (Entered: 03/01/2019) |
| 03/04/2019 | | | **ENDORSED ORDER RE 23 Joint Filing Regarding Scheduling.** *Text of Order: The proposed briefing schedule is approved. The clerk shall set oral argument on all dispositive motions for April 11, 2019 at 10 AM.* **So Ordered by Judge Paul J. Barbadoro.**(js) (Entered: 03/04/2019) |
| 03/04/2019 | | | NOTICE re: 10 MOTION for Summary Judgment, 2 MOTION for Summary Judgment. Motion Hearing on all Dispositive Motions set for 4/11/2019 10:00 AM before Judge Paul J. Barbadoro.(js) (Entered: 03/04/2019) |
| 03/06/2019 | | | **ENDORSED ORDER RE 12 Emergency MOTION to Intervene.** *Text of Order: Denied. For reasons that I will explain in an order to be issued within the next few days, I intend to deny the motion to intervene but grant the movant amicus status with both the right to submit a memorandum in support of its position and the right to participate in oral argument. I will enter this order without prejudice to the movant's right to seek reconsideration of the order at any time if, because of changed circumstances, the plaintiffs are unable to adequately represent the movant's interests. Any memorandum filed by the movant pursuant to this order shall be filed on or before March 8, 2019.* |

| | | | |
|---|---|---|---|
| | | | **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/06/2019) |
| 03/08/2019 | 24 | | **ORDER denying without prejudice 12 Emergency Motion to Intervene. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/08/2019) |
| 03/08/2019 | 25 | | Assented to MOTION for Leave to File Amicus Curiae Brief filed by State of New Jersey. Attorney Gillian A. Woolf added to party State of New Jersey(pty:am). (Attachments: # 1 Memorandum of Law In Support Of Motion For Leave To Participate As Amicus Curiae, # 2 Proposed Order, # 3 Exhibit Proposed Brief of Amicus Curiae of The State of New Jersey)(Woolf, Gillian) (Entered: 03/08/2019) |
| 03/08/2019 | 26 | | Assented to MOTION to File Amicus Brief filed by State of New Jersey.(Woolf, Gillian) (Entered: 03/08/2019) |
| 03/08/2019 | 27 | | Notice of Amicus Curiae APPEARANCE entered by Peter S. Cowan on behalf of Michigan Bureau of State Lottery Attorney Peter S. Cowan added to party Michigan Bureau of State Lottery(pty:am).(Cowan, Peter) (Entered: 03/08/2019) |
| 03/08/2019 | 28 | | Assented to MOTION for Leave to File Amicus Curiae Memorandum In Support of Plaintiffs' Motions for Summary Judgment filed by Michigan Bureau of State Lottery. (Attachments: # 1 Memorandum of Law, # 2 Exhibit A–[Proposed] Amicus Curiae Memorandum, # 3 Attachment to Exhibit A–1 Listing of Supporting States)(Cowan, Peter) (Entered: 03/08/2019) |
| 03/08/2019 | 29 | | Partially Assented to MOTION for Mark G. Sands to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1782552.) filed by Michigan Bureau of State Lottery. Follow up on Objection on 3/22/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Mark G. Sands)(Cowan, Peter) (Entered: 03/08/2019) |
| 03/08/2019 | 30 | | Partially Assented to MOTION for Melinda A. Leonard to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1782553.) filed by Michigan Bureau of State Lottery. Follow up on Objection on 3/22/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Melinda A. Leonard)(Cowan, Peter) (Entered: 03/08/2019) |
| 03/08/2019 | 31 | | Partially Assented to MOTION for Donald S. McGehee to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1782554.) filed by Michigan Bureau of State Lottery. Follow up on Objection on 3/22/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Donald S. McGehee)(Cowan, Peter) (Entered: 03/08/2019) |
| 03/08/2019 | 32 | | MOTION to Intervene as Plaintiff filed by Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery. Attorney Patrick J. Queenan added to party Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery(pty:intvp). Follow up on Objection on 3/22/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law In Support of Motion to Intervene, # 2 Exhibit Proposed Complaint in Intervention, # 3 Exhibit Proposed Motion for Summary |

| | | | |
|---|---|---|---|
| | | | Judgment, Memorandum ISO, and Declaration)(Queenan, Patrick) (Entered: 03/08/2019) |
| 03/08/2019 | 33 | | BRIEF/MEMORANDUM *as Amicus Curiae in Support of Plaintiffs* by iDevelopment and Economic Association(Ifrah, Alain) (Entered: 03/08/2019) |
| 03/09/2019 | 34 | | Partially Assented to MOTION for A. Michael Pratt to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1782578.) filed by Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery. Follow up on Objection on 3/25/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) A. Michael Pratt)(Queenan, Patrick) (Entered: 03/09/2019) |
| 03/09/2019 | 35 | | Partially Assented to MOTION for Joanna J. Cline to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1782579.) filed by Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery. Follow up on Objection on 3/25/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Joanna J. Cline)(Queenan, Patrick) (Entered: 03/09/2019) |
| 03/09/2019 | 36 | | Partially Assented to MOTION for Christopher B. Chuff to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1782580.) filed by Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery. Follow up on Objection on 3/25/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Christopher B. Chuff)(Queenan, Patrick) (Entered: 03/09/2019) |
| 03/09/2019 | | | **ENDORSED ORDER denying 32 Motion to Intervene. *Text of Order: Denied. I deny the motion for substantially the same reasons that caused me to deny the prior motion to intervene. Further, I categorically reject the proposed intervenor's contention that it is entitled to intervene as of right in this case simply because an adverse ruling could affect the lawfulness of its state statutes under certain circumstances. The cases before me do not involve Pennsylvania law, an adverse ruling by this court would not bind the proposed intervenor, and nothing prevents the proposed intervenor from bringing its own action in a court with proper venue to protect its interests. That being said, I will grant the proposed intervenor amicus status with the right to file a supporting brief and present oral argument. I will reassess the issue if changed circumstances warrant a different conclusion. Any amicus brief shall be filed on or before March 13, 2019.* So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/11/2019) |
| 03/09/2019 | | | **ENDORSED ORDER granting 25 Assented to Motion for Leave to File Amicus Curiae Brief; granting 26 Assented to Motion to File Amicus Brief. *Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/11/2019) |
| 03/09/2019 | | | **ENDORSED ORDER granting 28 Assented to Motion for Leave to File Amicus Curiae Memorandum In Support of Plaintiffs' Motions for** |

| | | |
|---|---|---|
| | | **Summary Judgment.** *Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* **So Ordered by Judge Paul J. Barbadoro.**(js) (Entered: 03/11/2019) |
| 03/09/2019 | | **ENDORSED ORDER granting 29 Partially Assented to MOTION for Mark G. Sands to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Mark G. Sands, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro. ECF Registration Deadline set for 3/19/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/11/2019) |
| 03/09/2019 | | **ENDORSED ORDER granting 30 Partially Assented to MOTION for Melinda A. Leonard to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Melinda A. Leonard, Esq submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro. ECF Registration Deadline set for 3/19/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/11/2019) |
| 03/09/2019 | | **ENDORSED ORDER granting 31 Partially Assented to MOTION for Donald S. McGehee to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Donald S. McGehee, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro. ECF Registration Deadline set for 3/19/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/11/2019) |
| 03/11/2019 | 37 | BRIEF/MEMORANDUM *(of Amicus Michigan Bureau of State Lottery in Support of Plaintiffs' Motions for Summary Judgment)* by Michigan Bureau of State Lottery (Attachments: # 1 Exhibit 1–Listing of Supporting States)(Cowan, Peter) (Entered: 03/11/2019) |
| 03/11/2019 | | **ENDORSED ORDER granting 34 Partially Assented to MOTION for A. Michael Pratt to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that A. Michael Pratt, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/21/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/11/2019) |
| 03/11/2019 | | |

| | | |
|---|---|---|
| | | **ENDORSED ORDER granting 35 Partially Assented to MOTION for Joanna J. Cline to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Joanna J. Cline, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/21/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/11/2019) |
| 03/11/2019 | | **ENDORSED ORDER granting 36 Partially Assented to MOTION for Christopher B. Chuff to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Christopher B. Chuff, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/21/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/11/2019) |
| 03/11/2019 | 38 | BRIEF/MEMORANDUM *as Amicus Curiae in Support of Plaintiffs* by State of New Jersey(Woolf, Gillian) (Entered: 03/11/2019) |
| 03/11/2019 | 39 | Notice of Amicus Curiae APPEARANCE entered by Robert R. Lucic on behalf of Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery Attorney Robert R. Lucic added to party Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery(pty:am).(Lucic, Robert) (Entered: 03/11/2019) |
| 03/11/2019 | | **ENDORSED ORDER RE 37 Brief (of Amicus Michigan Bureau of State Lottery in Support of Plaintiffs' Motions for Summary Judgment).** *Text of Order: The Michigan Bureau of State Lottery shall be permitted to participate in oral argument on any dispositive motion.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/12/2019) |
| 03/13/2019 | 40 | BRIEF/MEMORANDUM *as Amicus Curiae in Support of Plaintiffs* by Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery(Queenan, Patrick) (Entered: 03/13/2019) |
| 03/13/2019 | 41 | Partially Assented to MOTION for Thomas R. Valen to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1784820.) filed by State of New Jersey. Follow up on Objection on 3/27/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Woolf, Gillian) (Entered: 03/13/2019) |
| 03/13/2019 | 42 | Partially Assented to MOTION for Lawrence S. Lustberg to Appear Pro Hac Vice *Lawrence S. Lustberg* (Filing fee $ 100, Receipt # 0102–1784844.) filed by State of New Jersey. Follow up on Objection on 3/27/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Woolf, Gillian) (Entered: 03/13/2019) |

| 03/13/2019 | 43 | | Partially Assented to MOTION for Avram D. Frey to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1784854.) filed by State of New Jersey. Follow up on Objection on 3/27/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Woolf, Gillian) (Entered: 03/13/2019) |
| 03/13/2019 | 44 | | Partially Assented to MOTION for Meghal J. Shah to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1784856.) filed by State of New Jersey. Follow up on Objection on 3/27/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Woolf, Gillian) (Entered: 03/13/2019) |
| 03/14/2019 | | | **ENDORSED ORDER granting 41 Partially Assented to MOTION for Thomas R. Valen to Appear Pro Hac Vice. *Text of Order: Granted on the condition that Thomas R. Valen, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/25/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/14/2019) |
| 03/14/2019 | | | **ENDORSED ORDER granting 42 Partially Assented to MOTION for Lawrence S. Lustberg to Appear Pro Hac Vice. *Text of Order: Granted on the condition that Lawrence S. Lustberg, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/25/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/14/2019) |
| 03/14/2019 | | | **ENDORSED ORDER granting 43 Partially Assented to MOTION for Avram D. Frey to Appear Pro Hac Vice. *Text of Order: Granted on the condition that Avram D. Frey, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/25/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/14/2019) |
| 03/14/2019 | | | **ENDORSED ORDER granting 44 Partially Assented to MOTION for Meghal J. Shah to Appear Pro Hac Vice. *Text of Order: Granted on the condition that Meghal J. Shah, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 3/25/2019.To access the online registration form, click HERE.** Persons filing electronically are strongly encouraged to complete the interactive training modules available on |

| | | | |
|---|---|---|---|
| | | | the courts website. To access these modules, click <u>HERE</u>.(js) (Entered: 03/14/2019) |
| 03/22/2019 | <u>45</u> | | MOTION to Dismiss for Failure to State a Claim *and lack of jurisdiction* filed by US Attorney General, US Department of Justice, US Department of Justice, USA. Follow up on Objection on 4/5/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Myers, Steven) (Entered: 03/22/2019) |
| 03/22/2019 | <u>46</u> | | OBJECTION to <u>10</u> MOTION for Summary Judgment, <u>2</u> MOTION for Summary Judgment filed by US Attorney General, US Department of Justice, US Department of Justice, USA. Follow up on Reply on 3/29/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Myers, Steven) (Entered: 03/22/2019) |
| 03/22/2019 | <u>47</u> | | MEMORANDUM re <u>46</u> Objection to Motion, <u>45</u> MOTION to Dismiss for Failure to State a Claim *and lack of jurisdiction* filed by US Attorney General, US Department of Justice, US Department of Justice, USA. (Myers, Steven) (Entered: 03/22/2019) |
| 03/22/2019 | <u>48</u> | | Notice of Amicus Curiae APPEARANCE entered by Michael J. Tierney on behalf of The Coalition to Stop Internet Gambling, The National Association of Convenience Stores Attorney Michael J. Tierney added to party The Coalition to Stop Internet Gambling(pty:am), Attorney Michael J. Tierney added to party The National Association of Convenience Stores(pty:am).(Tierney, Michael) (Entered: 03/22/2019) |
| 03/22/2019 | <u>49</u> | | Partially Assented to MOTION for Brian W. Barnes to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1789899.) filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Follow up on Objection on 4/5/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # <u>1</u> Exhibit (Affidavit) Exh A – Brian W. Barnes)(Tierney, Michael) (Entered: 03/22/2019) |
| 03/22/2019 | <u>50</u> | | Partially Assented to MOTION for Charles J. Cooper to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1789904.) filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Follow up on Objection on 4/5/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # <u>1</u> Exhibit (Affidavit) Exh A – Charles J. Cooper)(Tierney, Michael) (Entered: 03/22/2019) |
| 03/22/2019 | <u>51</u> | | Partially Assented to MOTION for David H. Thompson to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1789909.) filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Follow up on Objection on 4/5/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # <u>1</u> Exhibit (Affidavit) Exh A – David H. Thompson)(Tierney, Michael) (Entered: 03/22/2019) |
| 03/22/2019 | <u>52</u> | | Partially Assented to MOTION for J. Joel Alicea to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1789919.) filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Follow up on Objection on 4/5/2019. The court only follow up date DOES NOT include 3 |

| | | |
|---|---|---|
| | | additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Exh A – J. Joel Alicea)(Tierney, Michael) (Entered: 03/22/2019) |
| 03/22/2019 | 53 | Assented to MOTION for Leave to File to Participate as Amici Curiae filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. (Attachments: # 1 Memorandum of Law, # 2 Proposed Brief for the Coalition to Stop Internet Gambling and the National Association of Convenience Stores as Amici Curiae in Support of Defendants' Dispositive Motions)(Tierney, Michael) (Entered: 03/22/2019) |
| 03/25/2019 | | **ENDORSED ORDER granting 53 Motion for Leave to File to Participate as Amici Curiae.** *Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* **So Ordered by Judge Paul J. Barbadoro.(js) (Entered: 03/25/2019)** |
| 03/25/2019 | | **ENDORSED ORDER RE 38 BRIEF/MEMORANDUM as Amicus Curiae in Support of Plaintiffs.** *Text of Order: The State of New Jersey shall be permitted to participate in oral argument on any dispositive motion.* **So Ordered by Judge Paul J. Barbadoro.(js) (Entered: 03/25/2019)** |
| 03/25/2019 | | **ENDORSED ORDER.** *Text of Order: The court will hold a telephone conference at 2 PM on April 4, 2019 to discuss the way in which the court will conduct the April 11, 2019 hearing on dispositive motions.* **So Ordered by Judge Paul J. Barbadoro.(js) (Entered: 03/25/2019)** |
| 03/25/2019 | | NOTICE of Hearing. Telephone Conference set for 4/2/2019 02:00 PM before Judge Paul J. Barbadoro. The court will contact the parties with dial–in instructions.(js) (Entered: 03/25/2019) |
| 03/25/2019 | | **ENDORSED ORDER granting 49 Partially Assented to Motion for Brian W. Barnes to Appear Pro Hac Vice; granting 50 Partially Assented to Motion for Charles J. Cooper to Appear Pro Hac Vice; granting 51 Partially Assented to Motion for David H. Thompson to Appear Pro Hac Vice; granting 52 Partially Assented to Motion for J. Joel Alicea to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Brian W. Barnes, Esq.; Charles J. Cooper, Esq.; David H. Thompson, Esq.; and J. Joel Alicea submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro. ECF Registration Deadline set for 4/4/2019.To access the online registration form, click HERE**. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 03/26/2019) |
| 03/26/2019 | | RESCHEDULING NOTICE of Hearing  TO CORRECT DATE FROM 4/2/2019 to 4/4/2019. Telephone Conference set for 4/4/2019 02:00 PM before Judge Paul J. Barbadoro. The court will contact the parties with dial–in instructions.(js) (Entered: 03/26/2019) |
| 03/26/2019 | 54 | BRIEF/MEMORANDUM by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores(Tierney, Michael) (Entered: 03/26/2019) |

| 03/27/2019 | | | **ENDORSED ORDER RE 54 BRIEF/MEMORANDUM by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores.** *Text of Order: The Coalition to Stop Internet Gambling and The National Association of Convenience Stores shall be permitted to participate in oral argument on any dispositive motion.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/27/2019) |
| 03/27/2019 | | | **ENDORSED ORDER denying as moot 3 Rule 57 Motion for Speedy Hearing; denying as moot 11 Rule 57 Motion for Speedy Hearing.** *Text of Order: The motions are denied as moot in light of the currently scheduled hearing.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/28/2019) |
| 03/28/2019 | 55 | | REFILED. SEE DOCUMENT 56. Assented to MOTION for Reconsideration re Order on Motion to Intervene,,,, filed by iDevelopment and Economic Association.(Ifrah, Alain) Modified on 3/28/2019 to add: Refiled text (js). (Entered: 03/28/2019) |
| 03/28/2019 | 56 | | MOTION for Reconsideration re 24 Order on Motion to Intervene, Order,,, *(This document replaces document number 55)* filed by iDevelopment and Economic Association. Follow up on Objection on 4/11/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Ifrah, Alain) (Entered: 03/28/2019) |
| 03/28/2019 | | | Motions terminated: 55 Assented to MOTION for Reconsideration re Order on Motion to Intervene filed by iDevelopment and Economic Association. MOTION REFILED SEE DOCUMENT NO. 56. (js) (Entered: 03/28/2019) |
| 03/29/2019 | 57 | | REPLY to Objection to Motion re 10 MOTION for Summary Judgment, 45 MOTION to Dismiss for Failure to State a Claim *and lack of jurisdiction (Opposition to Motion to Dismiss)* filed by NeoPollard Interactive LLC, Pollard Banknote Limited. Surreply due by 4/3/2019. (Attachments: # 1 Exhibit (Affidavit) Declaration of Michael A. Delaney, # 2 Exhibit 1 to Declaration (5/13/05 Letter from Laura H. Parsky, # 3 Exhibit 2 to Declaration (8/23/02 Letter from Michael Chertoff)(Delaney, Michael) (Entered: 03/29/2019) |
| 03/29/2019 | 58 | | MEMORANDUM re 46 Objection to Motion, 45 MOTION to Dismiss for Failure to State a Claim *and lack of jurisdiction* filed by NH Lottery Commission. (Galdieri (NHAG), Anthony) (Entered: 03/29/2019) |
| 04/04/2019 | | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. TELEPHONE CONFERENCE held on 4/4/2019. Discussion regarding schedule for oral argument taking place on 4/11/2019. Court issues oral order converting Rule 12(b)(6) Motion to Rule 56 Motion. (Court Reporter: Liza Dubois)(Total Hearing Time: 25 minutes) (js) (Entered: 04/04/2019) |
| 04/04/2019 | | | **ORAL ORDER– Defendants' Rule 12(b)(6) Motion converted to Rule 56 Motion. Government does not need to file an answer. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 04/04/2019) |
| 04/08/2019 | 59 | | OBJECTION to 56 MOTION for Reconsideration re 24 Order on Motion to Intervene, Order,,, *(This document replaces document number 55)* filed by US Attorney General, US Department of Justice, US Department of Justice, USA. Follow up on Reply on 4/15/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Myers, Steven) (Entered: 04/08/2019) |

| 04/08/2019 | 60 | | TRANSCRIPT of Proceedings for Telephone Conference held on April 4, 2019. Court Reporter: Liza W. Dubois, Telephone # 603 225–1442. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 4/29/2019. Redacted Transcript Follow Up 5/9/2019. Release of Transcript Restriction set for 7/5/2019.(js) (Entered: 04/08/2019) |
| --- | --- | --- | --- |
| 04/08/2019 | 61 | | REPLY to Objection to Motion re 45 MOTION to Dismiss for Failure to State a Claim *and lack of jurisdiction* filed by US Attorney General, US Department of Justice, US Department of Justice, USA. Surreply due by 4/15/2019. (Attachments: # 1 Exhibit Declaration of Steven A. Myers)(Myers, Steven) (Entered: 04/08/2019) |
| 04/09/2019 | 62 | | RESPONSE to Motion re 56 MOTION for Reconsideration re 24 Order on Motion to Intervene, Order,,, *(This document replaces document number 55)* filed by NeoPollard Interactive LLC, Pollard Banknote Limited. (Delaney, Michael) (Entered: 04/09/2019) |
| 04/09/2019 | 63 | | CERTIFICATE OF SERVICE by NeoPollard Interactive LLC, Pollard Banknote Limited re: 62 Response to Motion, (Delaney, Michael) (Entered: 04/09/2019) |
| 04/11/2019 | | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. MOTION HEARING held on 4/11/2019 re 45 MOTION to Dismiss for Failure to State a Claim *and lack of jurisdiction*, 10 MOTION for Summary Judgment, 2 MOTION for Summary Judgment. Plaintiff to file supplemental memorandum within 7 days; defendant to file supplemental memorandum within 14 days; any party may file a reply brief to defendant's filing within 7 days. (Court Reporter: Liza Dubois (AM); Brenda Hancock (PM)) (Pltfs Atty: Anthony Galdieri; Consolidated Plaintiff: Matthew D. McGill; Amici: Alain J. Ifrah; Thomas R. Valen; Mark G. Sands) (Defts Atty: Steven A. Myers; Amici: David H. Thompson; Joel Alicea)(Total Hearing Time: 4 hours) (js) (Entered: 04/11/2019) |
| 04/12/2019 | 64 | 33 | **ORDER denying in part and taking under advisement in part 45 Motion to Dismiss for Failure to State a Claim; taking under advisement 2 Motion for Summary Judgment; taking under advisement 10 Motion for Summary Judgment. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 04/12/2019) |
| 04/16/2019 | 65 | | NOTICE of Attorney Appearance by Stephen N. Zaharias on behalf of The Coalition to Stop Internet Gambling, The National Association of Convenience Stores Attorney Stephen N. Zaharias added to party The Coalition to Stop Internet Gambling(pty:am), Attorney Stephen N. Zaharias added to party The |

| | | | |
|---|---|---|---|
| | | | National Association of Convenience Stores(pty:am).(Zaharias, Stephen) (Entered: 04/16/2019) |
| 04/18/2019 | 66 | | NOTICE of Attorney Appearance by Matthew J. Glover on behalf of US Attorney General, US Department of Justice, US Department of Justice, USA Attorney Matthew J. Glover added to party US Attorney General(pty:dft), Attorney Matthew J. Glover added to party US Attorney General(pty:condft), Attorney Matthew J. Glover added to party US Department of Justice(pty:dft), Attorney Matthew J. Glover added to party US Department of Justice(pty:condft), Attorney Matthew J. Glover added to party USA(pty:condft).(Glover, Matthew) (Entered: 04/18/2019) |
| 04/18/2019 | 67 | | BRIEF/MEMORANDUM *Pursuant to Court Minute Entry of April 11, 2019* by NH Lottery Commission(Galdieri (NHAG), Anthony) (Entered: 04/18/2019) |
| 04/18/2019 | 68 | | TRANSCRIPT of Proceedings for ORAL ARGUMENT – Morning Session held on 4/11/2019. Court Reporter: Liza Dubois, Telephone # 603–225–1442. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number. <br><br> **NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.** <br><br> Redaction Request Follow Up 5/9/2019. Redacted Transcript Follow Up 5/20/2019. Release of Transcript Restriction set for 7/15/2019.(vln) (Entered: 04/18/2019) |
| 04/18/2019 | 69 | | TRANSCRIPT of Proceedings for ORAL ARGUMENT – Afternoon Session held on 4/11/2019. Court Reporter: Brenda Hancock, Telephone # 603–225–1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number. <br><br> **NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.** <br><br> Redaction Request Follow Up 5/9/2019. Redacted Transcript Follow Up 5/20/2019. Release of Transcript Restriction set for 7/15/2019.(vln) (Entered: 04/19/2019) |
| 04/25/2019 | 70 | | BRIEF/MEMORANDUM *(Defendants' Supplemental Memorandum)* by US Attorney General, US Department of Justice, US Department of Justice, USA(Myers, Steven) (Entered: 04/25/2019) |
| 04/29/2019 | 71 | | |

| | | |
|---|---|---|
| | | Assented to MOTION for Nicole Frazer Reaves to Appear Pro Hac Vice (Filing fee $ 100, Receipt # 0102–1805920.) filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. (Attachments: # 1 Affidavit of Attorney Nicole Frazer Reaves)(Tierney, Michael) (Entered: 04/29/2019) |
| 05/01/2019 | | **ENDORSED ORDER granting 71 Assented to MOTION for Nicole Frazer Reaves to Appear Pro Hac Vice.** *Text of Order: Granted on the condition that Nicole Frazer Reaves, Esq. submits an ECF registration form within 10 days. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Magistrate Judge Andrea K. Johnstone. ECF Registration Deadline set for 5/13/2019.To access the online registration form, click HERE**. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(js) (Entered: 05/01/2019) |
| 05/01/2019 | 72 | NOTICE of Attorney Withdrawal by Nicholas F. Casolaro on behalf of NeoPollard Interactive LLC, Pollard Banknote Limited(Casolaro, Nicholas) (Entered: 05/01/2019) |
| 05/02/2019 | 73 | RESPONSE re 70 Brief *(Reply to Defendants' Supplemental Memorandum)* filed by NeoPollard Interactive LLC, Pollard Banknote Limited. (Delaney, Michael) (Entered: 05/02/2019) |
| 05/02/2019 | 74 | RESPONSE re 70 Brief *NHLC's Reply Memorandum to the Defendants' Supplemental Memorandum* filed by NH Lottery Commission. (Galdieri (NHAG), Anthony) (Entered: 05/02/2019) |
| 05/02/2019 | 75 | BRIEF/MEMORANDUM re 70 Brief by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores(Tierney, Michael) (Entered: 05/02/2019) |
| 05/02/2019 | 76 | MEMORANDUM in Support re 10 MOTION for Summary Judgment, 2 MOTION for Summary Judgment filed by Michigan Bureau of State Lottery. (Attachments: # 1 Exhibit 1 – List of Supporting States and Governmental Agencies)(Sands, Mark) (Entered: 05/02/2019) |
| 05/02/2019 | 77 | Notice of Supplemental Authority by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores (Attachments: # 1 Exhibit A – Pages from July 10 Senate Judiciary Committee Hearing, # 2 Exhibit B – Judiciary Committee Minutes, # 3 Exhibit C – July 21 Draft of Wire Act, # 4 Exhibit D – White Sept 1 Memo)(Tierney, Michael) (Entered: 05/02/2019) |
| 05/02/2019 | 78 | RESPONSE re 70 Brief *Reply of Amicus Curiae to Defendants' Supplemental Memorandum* filed by Commonwealth of Pennsylvania, acting by and through, Department of Revenue, Secretary C. Daniel Hassell, and Bureau of Lottery. (Queenan, Patrick) (Entered: 05/02/2019) |
| 05/09/2019 | 79 | Response to [Dkt. 77] Notice of Supplemental Authority by NeoPollard Interactive LLC, Pollard Banknote Limited (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Delaney, Michael) (Entered: 05/09/2019) |
| 05/23/2019 | 80 | MOTION to Intervene as Defendant filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Follow up on Objection on 6/6/2019. The court only follow up date DOES NOT include 3 |

| | | | |
|---|---|---|---|
| | | | additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law In Support of Motion to Intervene, # 2 Attachment – Proposed Defendants–Intervenors' Proposed Motion to Dismiss or for Summary Judgment, # 3 Attachment – Declaration of Lyle Beckwith in Support of Proposed Defendants–Intervenors' Motion to Intervene)(Tierney, Michael) (Entered: 05/23/2019) |
| 06/03/2019 | 81 | 35 | ///**ORDER denying 45 Motion to Dismiss for Failure to State a Claim; granting 10 Motion for Summary Judgment; granting 2 Motion for Summary Judgment. So Ordered by Judge Paul J. Barbadoro.**(js) (Entered: 06/03/2019) |
| 06/06/2019 | 82 | | OBJECTION to 80 MOTION to Intervene as Defendant filed by NH Lottery Commission. Follow up on Reply on 6/13/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law in Support of Objection)(Galdieri (NHAG), Anthony) (Entered: 06/06/2019) |
| 06/06/2019 | 83 | | Objection to 80 MOTION to Intervene as Defendant filed by NeoPollard Interactive LLC, Pollard Banknote Limited. (Attachments: # 1 Memorandum of Law)(Delaney, Michael) (Entered: 06/06/2019) |
| 06/10/2019 | 84 | | MOTION for Leave to File Reply in Support of Their Intervention Motion filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Follow up on Objection on 6/24/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Proposed Reply, # 2 Exhibit Disclosure Statement)(Tierney, Michael) (Entered: 06/10/2019) |
| 06/17/2019 | | | **ENDORSED ORDER granting 84 Motion for Leave to File Reply in Support of Their Intervention Motion.** *Text of Order: Granted. Within 48 hours counsel shall electronically refile the pleading attached to the Motion for Leave to File using the appropriate event in CMECF.* **So Ordered by Judge Paul J. Barbadoro. Miscellaneous Deadline set for 6/19/2019.**(js) (Entered: 06/17/2019) |
| 06/17/2019 | 85 | | REPLY to Objection to Motion re 80 MOTION to Intervene as Defendant filed by The Coalition to Stop Internet Gambling, The National Association of Convenience Stores. Surreply due by 6/24/2019. (Tierney, Michael) (Entered: 06/17/2019) |
| 06/20/2019 | 86 | | **ORDER denying 80 Motion to Intervene. So Ordered by Judge Paul J. Barbadoro.**(js) (Entered: 06/20/2019) |
| 06/20/2019 | | | **ENDORSED ORDER denying 56 Motion for Reconsideration Re: 24 Order on Motion to Intervene.** *Text of Order: Denied.* **So Ordered by Judge Paul J. Barbadoro.**(js) (Entered: 06/20/2019) |
| 06/20/2019 | 87 | 98 | **JUDGMENT is hereby entered in accordance with 81 Memorandum and Order on Motion to Dismiss for Failure to State a Claim, Order on Motion for Summary Judgment. Signed by Tracy A. Uhrin, Chief Deputy Clerk.** *(Case Closed)* (js) (Entered: 06/20/2019) |
| 08/16/2019 | 88 | 30 | NOTICE OF APPEAL as to 81 Order on Motion to Dismiss for Failure to State a Claim, Order on Motion for Summary Judgment, 87 Judgment, 64 Order on |

| | | | |
|---|---|---|---|
| | | | Motion to Dismiss for Failure to State a Claim,, Order on Motion for Summary Judgment,,, by US Attorney General, US Department of Justice, US Department of Justice, USA. (No fee paid, USA or IFP.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.]<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (Myers, Steven) (Entered: 08/16/2019) |
| 08/16/2019 | 89 | 28 | Appeal Cover Sheet as to 88 Notice of Appeal filed by US Department of Justice, US Attorney General, USA. (js) (Entered: 08/16/2019) |
| 08/16/2019 | 90 | 29 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 64, 81, 87–90, re 88 Notice of Appeal. A copy of the Notice of Appeal electronically delivered to all parties this date.(js) (Entered: 08/16/2019) |

Case 1:19-cv-00163-PB   Document 89   Filed 08/16/19   Page 1 of 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

APPEAL COVER SHEET

1.    USDC/NH Case No. 19-cv-163-PB

2.    TITLE OF CASE: NH Lottery Commission v. US Attorney General, et al.

3.    TYPE OF CASE: Civil

4.    NAME OF APPELLANT(S) & COUNSEL FOR APPELLANT(S):
      See certified copy of docket (ECF registered users not provided with a copy of docket)

5.    NAME OF APPELLEE(S) & COUNSEL FOR APPELLEE(S):
      See certified copy of docket (ECF registered users not provided with a copy of docket)

6.    NAME OF JUDGE: Judge Barbadoro

7.    DATE OF JUDGMENT OR ORDER ON APPEAL: **June 20, 2019**

8.    DATE OF NOTICE OF APPEAL: **August 16, 2019**

9.    FEE PAID or IFP :Not Applicable

10.   COURT APPOINTED COUNSEL: Not Applicable

11.   COURT REPORTER(S): and DATES:   Brenda Hancock 2/22/19; Liza Dubois 4/4/19; Liza Dubois (AM); Brenda Hancock (PM) 4/11/19;

12.   TRANSCRIPTS ORDERED/ON FILE: YES

13.   HEARING/TRIAL EXHIBITS: NO

14.   MOTIONS PENDING: NO

15.   GUIDELINES CASE: Not Applicable

16.   RELATED CASES or CROSS APPEAL:

17.   SPECIAL COMMENTS:

cc: Counsel of Record

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


NH Lottery Commission


        v.                                    No. 19-cv-163-PB

US Attorney General, et al.



CLERK'S CERTIFICATE TO
CIRCUIT COURT OF APPEALS


     I, Jennifer Sackos, Deputy Clerk of the United States District
Court for the District of New Hampshire, do hereby certify that the
following documents constitute the record on appeal to the First
Circuit Court of Appeals:

     DOCUMENTS NUMBERED: 64, 81, 87-90

     The Clerk's Office hereby certifies the record and docket sheet
available through ECF to be the certified record and the certified
copy of the docket entries.




                              IN TESTIMONY WHEREOF, I hereunto
                              set my hand and affix the seal
                              of said Court, at Concord, in
                              said District, on this day,
                              August 16, 2019


                              FCPƗGNˈLØN[ PEJ , Clerk


                              By: /s/ Jennifer Sackos, Deputy Clerk

                              Aug 16, 2019




cc: Counsel of Record

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NEW HAMPSHIRE LOTTERY COMMISSION,<br><br>         Plaintiffs,<br><br>    v.<br><br>WILLIAM BARR,<br>in his official capacity as Attorney General,<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>         Defendants. | Civil Action No. 1:19-cv-00163-PB |
| NEOPOLLARD INTERACTIVE LLC,<br><br>POLLARD BANKNOTE LIMITED,<br><br>         Plaintiffs,<br><br>    v.<br><br>WILLIAM P. BARR,<br>in his official capacity as Attorney General of the United States of America,<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE,<br><br>THE UNITED STATES OF AMERICA,<br><br>         Defendants. | Civil Action No. 1:19-cv-00170-SM (consolidated) |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE THAT all Defendants (the United States of America; the United

States Department of Justice; and William Barr, in his official capacity as Attorney General)

hereby appeal to the United States Court of Appeals for the First Circuit from the Court's June 20, 2019 Judgment, as well as the Court's June 3, 2019, Memorandum and Order and the Court's April 12, 2019 Order.

Dated: August 16, 2019                    Respectfully submitted,

                                          HASHIM M. MOOPPAN
                                          Deputy Assistant Attorney General

                                          MATTHEW J. GLOVER
                                          Counsel to the Assistant Attorney General

                                          JOHN R. TYLER
                                          Assistant Director, Federal Programs Branch

                                          /s/ *Steven A. Myers*
                                          STEVEN A. MYERS (NY Bar No. 4823043)
                                          Trial Attorney
                                          Federal Programs Branch
                                          U.S. Department of Justice, Civil Division
                                          1100 L St. NW
                                          Washington, DC 20005
                                          Telephone: (202) 305-8648
                                          Fax: (202) 616-8470
                                          Email: Steven.A.Myers@usdoj.gov

                                          *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on August 16, 2019, I served the foregoing via ECF electronic transmission in accordance with the Court's Administrative Procedures for ECF to the registered participants as identified on the Notice of Electronic Filing.

Dated:   August 16, 2019                    /s/ Steven A. Myers
                                            Steven A. Myers

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

New Hampshire Lottery Commission,
et al.

v.

Consolidated Case No.
19-cv-163-PB

William Barr, in his official
capacity as Attorney General of
the United States of America,
et al.

ORDER

The defendants' motion to dismiss for lack of jurisdiction
(Doc. No. 45) is denied to the extent it relies exclusively on
the Deputy Attorney General's April 8, 2019 memorandum.  See
Memorandum from Deputy Attorney General, *Notice Regarding
Applicability of the Wire Act, 18 U.S.C. § 1084, to State
Lotteries and Their Vendors* (April 8, 2019), Doc. No. 61-1.  The
remaining arguments in support of the defendants' motion to
dismiss and the parties' cross-motions for summary judgment are
taken under advisement.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul Barbadoro
United States District Judge

April 12, 2019

```
cc:   Francis Charles Fredericks, Esq.
      Anthony Galdieri, Esq.
      Matthew D. McGill, Esq.
      Michael A. Delaney, Esq.
      Nicholas F. Casolaro, Esq.
      Theodore B. Olson, Esq.
      Steven A. Myers, Esq.
      Alain J. Ifrah, Esq.
      Andrew J. Silver, Esq.
      Claude M. Stern, Esq.
      Demetrio F. Aspiras, III, Esq.
      Derek L. Shaffer, Esq.
      Avram D. Frey, Esq.
      Gillian A. Woolf, Esq.
      Lawrence S. Lustberg, Esq.
      Meghal J. Shah, Esq.
      Thomas R. Valen, Esq.
      Donald S. McGehee, Esq.
      Mark G. Sands, Esq.
      Melinda A. Leonard, Esq.
      Peter S. Cowan, Esq.
      A Michael Pratt, Esq.
      Christopher B. Chuff, Esq.
      Joanna J. Cline, Esq.
      Patrick J. Queenan, Esq.
      Robert R. Lucic, Esq.
      Brian W. Barnes, Esq.
      Charles J. Cooper, Esq.
      David H. Thompson, Esq.
      J. Joel Alicea, Esq.
      Michael J. Tierney, Esq.
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**New Hampshire Lottery Commission,
et al.**

      **v.**

**William Barr, in his official
capacity as Attorney General of
the United States of America,
et al.**

                Consolidated Case No.
                19-cv-163-PB
                Opinion No. 2019 DNH 091P

**MEMORANDUM AND ORDER**

The Wire Act of 1961 criminalizes certain gambling activities that use interstate wires.  In 2011, the Justice Department's Office of Legal Counsel ("OLC") issued a formal opinion declaring that the Wire Act only punishes activities associated with sports gambling.  Last year, the OLC changed its mind.  It now asserts that the Act also covers lotteries and other forms of gambling that do not involve sports.

The New Hampshire Lottery Commission has long offered lottery games such as Powerball that necessarily use interstate wires.  Fearing that these games, which produce substantial revenue for the State, will be deemed to be criminal activities under the OLC's current interpretation of the Wire Act, the Commission filed a complaint in this court seeking both a declaratory judgment that the Act is limited to sports gambling and an order under the Administrative Procedure Act setting

aside the OLC's new interpretation.  One of the Commission's
vendors also filed a complaint that has been joined with the
current action, seeking declaratory relief.

Before me are the Government's motion to dismiss for lack
of standing and the parties' cross-motions for summary judgment.
As I explain below, I agree with the plaintiffs that they have
standing to sue.  Based on the text, context, and structure of
the Wire Act, I also conclude that the Act is limited to sports
gambling.  Accordingly, I deny the Government's motions and
grant the plaintiffs' motions for summary judgment.

## I.   BACKGROUND

### A.   The Wire Act

The relevant portion of the Wire Act provides:

> Whoever being engaged in the business of betting or
> wagering knowingly uses a wire communication facility
> for the transmission in interstate or foreign commerce
> of bets or wagers or information assisting in the
> placing of bets or wagers on any sporting event or
> contest, or for the transmission of a wire
> communication which entitles the recipient to receive
> money or credit as a result of bets or wagers, or for
> information assisting in the placing of bets or
> wagers, shall be fined under this title or imprisoned
> not more than two years, or both.

18 U.S.C. § 1084(a).

Section 1084(a) consists of two clauses.  The first clause
makes it a crime for anyone engaged in the business of gambling
to use a wire communication facility "for the transmission in
interstate or foreign commerce of bets or wagers or information

assisting in the placing of bets or wagers on any sporting event
or contest." Id.  The second clause prohibits "the transmission
of a wire communication which entitles the recipient to receive
money or credit as a result of bets or wagers, or for
information assisting in the placing of bets or wagers." Id.

The key question this case presents is whether the limiting
phrase "on any sporting event or contest" in § 1084(a)'s first
clause modifies all references to "bets or wagers" in both
clauses or only the single reference it directly follows in the
first clause.  If, as the OLC concluded in 2011, the sports-
gambling modifier limits each reference to "bets or wagers,"
then both clauses apply only to sports gambling.  On the other
hand, if the OLC's current interpretation is correct, then
§ 1084(a)'s first clause prohibits the interstate transmission
of both sports and non-sports bets or wagers but punishes the
interstate transmission of information only if the information
assists in the placing of bets or wagers on sports.  It also
follows from the OLC's current interpretation that § 1084(a)'s
second clause is unconstrained by the sports-gambling modifier.

**B.    The OLC Opinions**

The path that leads to both OLC opinions begins in 2009,
when New York and Illinois asked the Department of Justice
whether in-state sales of lottery tickets via the internet would
violate the Wire Act if those sales caused information to be

3

transmitted across state lines.  The Department referred the
matter to the OLC for a formal opinion.  In 2011, the OLC
responded by concluding that "interstate transmissions of wire
communications that do not relate to 'a sporting event or
contest,' 18 U.S.C. § 1084(a), fall outside of the reach of the
Wire Act."  See Virginia A. Seitz, *Whether Proposals by Illinois*
*and New York to Use the Internet and Out-of-State Transaction*
*Processors to Sell Lottery Tickets to In-State Adults Violate*
*the Wire Act, Memorandum Opinion for the Assistant Attorney*
*General, Criminal Division,* U.S. Dept. Just. 1 (Sept. 20, 2011)
("2011 OLC Opinion" or "2011 Opinion"), Doc. No. 2-4.

The OLC arrived at this conclusion by first determining
that the phrase "on any sporting event or contest" in the first
clause of § 1084(a) applies to the transmissions of both "bets
or wagers" and "information assisting in the placing of bets or
wagers."  2011 OLC Opinion at 5.  Noting that the statutory text
could be read either way, the OLC explained that it was
"difficult to discern" why Congress would forbid the interstate
transmission of all types of bets or wagers but only prohibit
the transmission of information assisting in the placing of bets
or wagers that concern sports.  Id.  The more reasonable
inference, according to the OLC, was that Congress intended that
the prohibitions "be parallel in scope."  Id.

Next, the OLC concluded that the phrase "on any sporting
event or contest" also modifies the references to "bets or
wagers" in § 1084(a)'s second clause.  Id. at 7.  The OLC
explained that the references to "bets or wagers" in the second
clause are best understood as shorthand references to "bets or
wagers on any sporting event or contest" as described in the
first clause.  Id.  The 2011 Opinion also relied heavily on the
Act's legislative history to confirm its interpretation of the
section's limited scope.  See id. at 6-10.

In 2018, the OLC reversed course and released a new opinion
concluding that "the prohibitions of 18 U.S.C. § 1084(a) are not
uniformly limited to gambling on sporting events or contests."
See Steven A. Engel, Reconsidering Whether the Wire Act Applies
to Non-Sports Gambling, Memorandum Opinion for the Acting
Assistant Attorney General, Criminal Division, U.S. Dept. Just.
23 (Nov. 2, 2018) ("2018 OLC Opinion" or "2018 Opinion"), Doc.
No. 2-5.  The OLC now reasoned that the plain text of § 1084(a)
unambiguously requires that all but one of the section's
prohibitions apply to gambling generally.  See id. at 7, 11.

The OLC based its new reading on the syntactic structure of
§ 1084(a).  Relying heavily on a canon of statutory construction
commonly referred to as the "rule of the last antecedent," the
OLC concluded that the use of the sports-gambling modifier in
the section's first clause applies only to the prohibition on

5

the interstate transmission of "information assisting in the
placing of bets or wagers" and not the transmission of "bets or
wagers" themselves.  Id. at 7-8.

The OLC then concluded that the use of the sports-gambling
modifier in § 1084(a)'s first clause should not be carried
forward into the section's second clause.  Id. at 11.  The two
clauses are distinct "[a]s a matter of basic grammar" and "[i]t
would take a considerable leap for the reader to carry that
modifier both backward to the first prohibition of the first
clause, then forward across the entire second clause," the OLC
reasoned.  Id.

The OLC acknowledged its earlier concern that this reading
of § 1084(a) would produce anomalous results.  Id. at 14-15.  It
concluded, however, that it was obligated to give the section
the meaning suggested by its syntactic structure because the
anomalies identified in the 2011 Opinion did not rise to the
level of "patent absurdity."  Id.

On January 15, 2019, the Deputy Attorney General instructed
federal prosecutors to adhere to the OLC's 2018 Opinion.  See
*Applicability of the Wire Act, 18 U.S.C. § 1084, to Non-Sports
Gambling*, U.S. Dept. Just. (Jan. 15, 2019) ("Enforcement
Directive"), Doc. No. 2-6.  As an exercise of prosecutorial
discretion, however, they "should refrain from applying Section
1084(a) in criminal or civil actions to persons who engaged in

conduct violating the Wire Act in reliance on the 2011 OLC
Opinion prior to the date of this memorandum, and for 90 days
thereafter." Id. The grace period was intended to allow time
for businesses "to bring their operations into compliance with
federal law." Id. On February 28, the Deputy Attorney General
extended that window through June 14, 2019. See *Additional
Directive Regarding the Applicability of the Wire Act, 18 U.S.C.
§ 1084, to Non-Sports Gambling*, U.S. Dept. Just. (Feb. 28,
2019), Doc. No. 23-1.

C. **New Hampshire Lottery System**

The Lottery Commission offers multiple types of lottery
games. Those games include instant ticket and draw games that
offer tickets for sale at brick-and-mortar retailers, multi-
jurisdictional games such as Powerball and Mega Millions that
permit tickets to be purchased either in stores or through the
internet, and "iLottery" games that sell tickets exclusively
through the internet. Each game involves the use of interstate
wire transmissions.

The Lottery Commission contracts with a vendor, Intralot,
Inc., to provide a computer gaming system ("CGS") to manage the
games and a back-office system ("BOS") to manage inventory and
sales data. Its CGS and BOS servers for traditional retailer-
based lottery games are located in Barre, Vermont, with a
disaster recovery location in Strongsville, Ohio.

7

Brick-and-mortar retailers employ lottery terminals that connect the retailer to the CGS and BOS systems via the internet, a cellular network, or a satellite connection. The terminals send and receive different types of data based on the type of game. For example, in an instant ticket game, a player purchases a pre-printed ticket and scratches it to reveal the result. The lottery terminal then communicates with the CGS to activate the ticket, validate the result, and record the sale and payment of prizes. Draw games require players to purchase sets of numbers for a future draw. The retailer requests a wager transaction from the CGS through the terminal. The CGS generates a wager in the system and sends the information to the terminal. In both types of transactions, the data travels between a lottery terminal in New Hampshire and CGS servers in Vermont and Ohio.

The Lottery Commission also offers a variety of multi-jurisdictional games, including Powerball, Mega Millions, Tri-State Lotto, and Lucky for Life. Like the in-state games, ticket sales for these games typically occur through communications between lottery terminals in New Hampshire and CGS servers in Vermont and Ohio.[1] For verification purposes, bets for multi-state games are then sent from those CGS

---

[1] As discussed below, Powerball and Mega Millions tickets can also be purchased through the Lottery Commission's website.

locations to two independent control system servers in New
Hampshire over the internet.  The Lottery Commission also shares
sales and transaction data with member states over the internet.
Finally, once a jackpot is won, the participating lotteries
transfer their portions of the jackpot to the jurisdiction that
sold the winning ticket.  This is typically done via a wire
transfer or an automated clearing house process.

In September 2018, the Lottery Commission also began to
offer e-instant and draw games, including Powerball and Mega
Millions, via its internet platform or "iLottery."  NeoPollard
Interactive LLC, its vendor, operates a separate CGS with
servers located in New Hampshire.  The system uses geo-location
data from a player's computer or mobile device to ensure the
player can only make a bet or wager while physically located in
New Hampshire.  Although all financial transactions and bets
must begin and end in New Hampshire, the Commission states that
it cannot guarantee that intermediate routing of data or
information ancillary to a transaction does not cross state
lines.

Given the way in which these systems operate, the Lottery
Commission contends that the implementation of the 2018 OLC
Opinion may result in the suspension of all lottery sales by the
Commission, resulting in an annual loss of over $90 million in
state revenue.

9

**D.   Lottery Systems and "iGaming" in Amici States**

The State of New Jersey, the Commonwealth of Pennsylvania, and the Michigan Bureau of State Lottery[2] have filed amicus briefs in support of the plaintiffs.[3]  They describe the impact the 2018 OLC Opinion would have on their respective state-run lotteries.  The lottery systems in those states are substantially similar to New Hampshire's, including the types of games offered and their reliance on interstate wires.

In addition, New Jersey and Pennsylvania have legalized some forms of online gambling or "iGaming."  Those states permit state-licensed private companies to offer online casino and poker games to players within the state.  New Jersey also has a shared agreement with Delaware and Nevada allowing online poker players from those states to play together.

---

[2]   The Michigan Bureau of State Lottery represents that the Kentucky Lottery Corporation, the Tennessee Education Lottery Corporation, the Virginia Lottery, the Rhode Island Lottery, the Colorado State Lottery Division, the North Carolina Education Lottery, the State of Delaware, the State of Idaho, the State of Vermont, the State of Mississippi, the State of Alaska, and the District of Columbia support its brief.  See Doc. No. 37 at 2.

[3]   I also granted leave to iDevelopment and Economic Association ("iDEA") to participate as amicus on behalf of the plaintiffs, and to the Coalition to Stop Internet Gambling and the National Association of Convenience Stores to participate as amici on behalf of the Government.  The Government's amici submitted a joint brief.

### E.   Procedural History

The Lottery Commission filed its complaint and a concurrent motion for summary judgment on February 15, 2019.  The Commission seeks both a declaratory judgment that the Wire Act does not extend to state-conducted lottery activities and an order setting aside the 2018 OLC Opinion pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Later that day, NeoPollard Interactive LLC, the vendor that supports New Hampshire's iLottery system, and its 50% owner, Pollard Banknote LTD (collectively "NeoPollard") filed a complaint and a concurrent motion for summary judgment. NeoPollard seeks a judgment declaring that the Wire Act is limited to gambling on sporting events.  I consolidated the NeoPollard action with the Lottery Commission action on February 22, 2019.

The Government responded by filing a motion to dismiss the complaints pursuant to Rule 12(b)(1), because the plaintiffs lack standing to sue, and Rule 12(b)(6), because the complaints fail to state viable claims for relief.  With the parties' consent, I converted the Government's request for relief pursuant to Rule 12(b)(6) into a Rule 56 motion for summary judgment.

## II.  **ANALYSIS**

The Government has challenged the plaintiffs' standing to
sue.  I address the Government's standing argument first because
a court lacks subject matter jurisdiction unless the plaintiffs
have Article III standing.  See Pollard v. Law Office of Mandy
L. Spaulding, 766 F.3d 98, 101 (1st Cir. 2014).  I then turn to
the parties' cross-motions for summary judgment, which raise two
issues: (1) whether the Lottery Commission's APA claim fails
because the 2018 OLC Opinion is not "final agency action," and
(2) whether the Wire Act is limited to sports gambling.  I
conclude by considering the scope of the remedy.

### A. Standing

The Government argues that the plaintiffs lack standing
because they do not face an imminent threat of prosecution.  I
disagree.

The plaintiffs, as the parties invoking the court's
jurisdiction, bear the burden of establishing standing.  Susan
B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014).  The
level of proof required to meet this burden depends on the stage
of the proceedings.  Lujan v. Defs. of Wildlife, 504 U.S. 555,
561 (1992).  At summary judgment, the plaintiffs must support
their standing with specific evidence in the record.  Id.;
accord Clapper v. Amnesty Int'l USA, 568 U.S. 398, 412 (2013).

Because the jurisdictional facts are not in dispute in this
case, the plaintiffs' standing turns on a pure question of law.

Rooted in Article III's case-or-controversy requirement,
the constitutional core of standing requires a showing that a
plaintiff "(1) suffered an injury in fact, (2) that is fairly
traceable to the challenged conduct of the defendant, and (3)
that is likely to be redressed by a favorable judicial
decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547
(2016).[4] An injury in fact must be "concrete and particularized"
and "actual or imminent, not conjectural or hypothetical."
Lujan, 504 U.S. at 560 (internal quotation marks and citations
omitted). "The imminence requirement is met 'if the threatened
injury is "certainly impending" or there is a "substantial risk"
that the harm will occur.'" Massachusetts v. U.S. Dep't of
Health & Human Servs., 923 F.3d 209, 222 (1st Cir. 2019)
(quoting Driehaus, 573 U.S. at 158).

To establish an imminent injury in the context of a pre-
enforcement challenge to a criminal statute, a plaintiff must
demonstrate that he faces a threat of prosecution because of his
present or intended conduct. "[J]ust how clear the threat of

---

[4]     The second and third elements are not challenged here, for
good reason.  To the extent that the plaintiffs have suffered an
injury in fact, that injury can be traced directly to the
Government's threatened enforcement of the Wire Act and can be
redressed in this action.  See N.H. Right to Life Political
Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996).

prosecution needs to be turns very much on the facts of the case and on a sliding-scale judgment that is very hard to calibrate." N.H. Hemp Council, Inc. v. Marshall, 203 F.3d 1, 5 (1st Cir. 2000). Courts have variably described the requisite likelihood of enforcement as "sufficiently imminent," "credible," "substantial," and "realistic." See Driehaus, 573 U.S. at 159, 164 ("sufficiently imminent," "credible," and "substantial"); Holder v. Humanitarian Law Project, 561 U.S. 1, 15 (2010) ("credible"); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) ("credible" and "realistic"); Hemp Council, 203 F.3d at 5 ("realistic").[5]

Caselaw demonstrates where different types of pre-enforcement claims fall on the imminence spectrum. At the "clearly credible threat" end of the spectrum are pre-enforcement claims brought after an enforcer has actually threatened the plaintiff with arrest or prosecution. See, e.g., Steffel v. Thompson, 415 U.S. 452, 459 (1974) (protester had standing to bring pre-enforcement claim challenging

---

[5]    Standing and ripeness concerns overlap in pre-enforcement cases. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8 (2007). Whether the threatened enforcement is sufficiently imminent can be analyzed in terms of either the injury-in-fact requirement or the hardship element of the ripeness test, which requires that the threat have a sufficiently direct and immediate impact on a plaintiff. See id.; Abbott Labs. v. Gardner, 387 U.S. 136, 152 (1967). Because the parties have briefed the issue as one of standing, I follow their lead.

constitutionality of state criminal trespass law after being warned to stop handbilling and threatened with arrest and prosecution). Further along the spectrum, but still satisfying the imminence requirement, are cases where a plaintiff has engaged in behavior that a statute arguably makes unlawful, the plaintiff intends to continue to engage in the allegedly unlawful behavior, and though the enforcement process has not yet begun, the risk of future prosecution is substantial. See Driehaus, 573 U.S. at 161-66; see also Humanitarian Law Project, 561 U.S. at 15-16 (plaintiffs faced credible threat of prosecution where there was history of prosecution under challenged law and "Government ha[d] not argued . . . that plaintiffs will not be prosecuted if they do what they say they wish to do"); Babbitt, 442 U.S. at 302 (plaintiffs' fear of prosecution credible where, inter alia, "State ha[d] not disavowed any intention of invoking the criminal penalty provision" against entities that violate the statute). At the far end of the spectrum, where a threat of prosecution cannot be considered imminent, are cases in which "an unambiguous disclaimer of coverage by the prosecutor" would likely eliminate the threat of prosecution. Hemp Council, 203 F.3d at 5.

The plaintiffs in this case easily satisfy the imminence requirement. First, they have openly engaged for many years in conduct that the 2018 OLC Opinion now brands as criminal, and

they intend to continue their activities unless they are forced

to stop because of a reasonable fear that prosecutions will

otherwise ensue.  Second, the risk of prosecution is

substantial.  After operating for years in reliance on OLC

guidance that their conduct was not subject to the Wire Act, the

plaintiffs have had to confront a sudden about-face by the

Department of Justice.  Even worse, they face a directive from

the Deputy Attorney General to his prosecutors that they should

begin enforcing the OLC's new interpretation of the Act after

the expiration of a specified grace period.  Given these unusual

circumstances, the plaintiffs have met their burden to establish

their standing to sue.

The Government challenges this conclusion by arguing that

the likelihood that the plaintiffs will face prosecution under

the Wire Act is low, because the 2018 OLC Opinion does not

explicitly conclude that state agencies, state employees, and

state vendors are subject to prosecution under the Act.  I

reject this argument because the record tells a different story.

It is worth remembering that the 2011 OLC Opinion responded

to a request from two states for an opinion as to whether they

could sell lottery tickets online without violating the Wire

Act.  In concluding that the Wire Act did not apply to non-

sports gambling such as lotteries, the 2011 Opinion did not even

hint at the possibility that states would be exempt from the

Act's proscriptions.  Had the OLC believed that states were
excluded from the Act's coverage, it could have responded to the
states' request by simply informing them that they were not
subject to the Act.  To infer from the OLC's silence on this
point that it might conclude in the future that state actors are
not subject to the Wire Act requires an unwarranted speculative
leap.  This is especially true given the fact that a Department
of Justice official warned the Illinois lottery in 2005 that the
contemplated online sale of lottery tickets by the state would
violate the Wire Act.  See Letter from Laura H. Parsky, Deputy
Assistant Attorney General, to Carolyn Adams, Illinois Lottery
Superintendent (May 13, 2005), Doc. No. 57-2.

Any remaining doubt about the OLC's view on the issue is
dispelled by both the 2018 OLC Opinion itself and the
Government's actions after its issuance.  In defending its
decision to reinterpret the Wire Act, the OLC noted that "[s]ome
States . . . began selling lottery tickets via the Internet
after the issuance of our 2011 Opinion."  See 2018 OLC Opinion
at 22.  The OLC deemed these reliance interests insufficient to
warrant continued adherence to the 2011 Opinion.  See id. at 22-
23.  After the 2018 OLC Opinion issued, the Deputy Attorney
General issued the Enforcement Directive informing federal
prosecutors that ensuing prosecutions should be deferred for a
90-day grace period to give entities that "relied on the 2011

OLC Opinion time to bring their operations into compliance with federal law." See Enforcement Directive, Doc. No. 2-6. That guidance did not suggest that state entities that had relied on the 2011 Opinion would be exempt from prosecution after the grace period expired. Accordingly, nothing the Department of Justice said or did before the plaintiffs filed their complaints gave states like New Hampshire any reason to believe that state actors would not be prosecuted under the OLC's new interpretation of the Wire Act. When the complaints were filed, therefore, the plaintiffs faced a sufficiently imminent threat of prosecution to give them standing to sue.

Hemp Council supports this conclusion. There, in a hearing before the New Hampshire legislature, a representative of the Drug Enforcement Administration ("DEA") asserted that cultivating hemp plants violated federal law. See Hemp Council, 203 F.3d at 3. The First Circuit reasoned that the DEA had made its position clear and there was no "reason to doubt the government's zeal" in enforcing its position. Id. at 5. That position established that the plaintiffs, who were deterred from farming hemp, faced a "realistic" threat of prosecution. See id. So too here.

In resisting this assessment, the Government relies heavily on an April 8, 2019 memorandum issued by the Deputy Attorney General. That memorandum, which was issued after this case was

18

well underway, states that the Department of Justice is
currently reviewing whether the Wire Act applies to state
lotteries and their vendors.  See *Notice Regarding Applicability
of the Wire Act, 18 U.S.C. § 1084, to State Lotteries and Their
Vendors*, U.S. Dept. Just. (April 8, 2019) ("State Actor
Directive"), Doc. No. 61-1 at 4.  All federal prosecutors are
directed to "refrain from applying section 1084(a)" to such
entities during the pendency of the Department's review and for
90 days thereafter.  Id.  Because the State Actor Directive
declares that the Department has not yet determined whether
state lotteries and their vendors can be prosecuted under the
Wire Act, the Government argues that the plaintiffs do not face
a realistic threat of prosecution under the Act.  I am
unpersuaded by the Government's argument.

In a case such as this, where the defendant argues that its
actions after a complaint is filed eliminate the threatened
injury upon which the plaintiffs' claim to standing is based,
the defendant bears the "heavy burden" of persuading the court
that it is "absolutely clear that the allegedly wrongful
behavior could not reasonably be expected to recur."  Friends of
the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S.
167, 189 (2000) (quoting United States v. Concentrated Phosphate
Export Ass'n, 393 U.S. 199, 203 (1968)); accord Already, LLC v.

Nike, Inc., 568 U.S. 85, 92 (2013); Ramírez v. Sánchez Ramos, 438 F.3d 92, 100 (1st Cir. 2006).

   The Government cannot satisfy this burden for two related reasons.  First, at present, the State Actor Directive is nothing more than a temporary moratorium that cannot sustain a mootness claim.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (temporary moratorium on use of challenged policy did not moot the case).  Second, to the extent that the Government holds out the possibility that the temporary moratorium might become permanent at a later date, its argument is purely speculative.  The Government has rejected the only argument put forward by the Lottery Commission that states are not covered by the Act, and it has otherwise failed to identify any alternative legal theory as to why state actors might be exempt.  See Doc. No. 70.  Speculation that such a viable theory may exist cannot provide a sufficient foundation to moot a live controversy.

   The Government's remaining standing argument is less conventional, but it too fails to persuade.  It is based on the mistaken premise that a plaintiff has standing to seek pre-enforcement review only when challenging a criminal statute on constitutional grounds.  The Supreme Court cases the Government cites for this proposition merely hold that constitutional challenges are susceptible to pre-enforcement review.  See, e.g., Driehaus, 573 U.S. at 159; Humanitarian Law Project, 561

20

U.S. at 15-16; Babbitt, 442 U.S. at 298.  They do not imply that a constitutional challenge is necessary.  In fact, the Supreme Court has suggested that constitutional challenges are only an "example" of permissible pre-enforcement review when the Government issues a threat.  See MedImmune, 549 U.S. at 128-29.

This case also differs from the cases the Government cites because it involves a claim that the 2018 Opinion is an unlawful final agency action that must be set aside pursuant to the APA. In addressing a similar APA pre-enforcement claim that lacked an alleged constitutional violation, the Supreme Court held in Abbott Labs that the plaintiffs had standing to seek pre-enforcement review.  See 387 U.S. at 154.  The Court reasoned that the challenged agency action "is directed at [the plaintiffs] in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the [agency's] rule they are quite clearly exposed to the imposition of strong sanctions."  Id.  The plaintiffs thus suffered an injury in fact that satisfied Article III, although they did not present a constitutional claim.  See id.  The same circumstances are present here and the same conclusion follows.

As recently as 2016, the Supreme Court reiterated that "[a]s we have long held, parties need not await enforcement proceedings before challenging final agency action where such proceedings carry the risk of 'serious criminal and civil

21

penalties.'" U.S. Army Corps of Eng'rs v. Hawkes Co., 136 S.
Ct. 1807, 1815 (2016) (quoting Abbott Labs., 387 U.S. at 153).
Although Hawkes did not address standing, only the finality of
agency action, the Court's observation supports the view that
Driehaus did not engraft a constitutional requirement for pre-
enforcement review of APA claims that is absent in Abbott Labs.

In any event, the Government concedes that its position is
at odds with the First Circuit's decision in Hemp Council, which
entertained a statutory challenge to the DEA's interpretation of
a federal criminal statute.  See 203 F.3d at 5.  Because I am
bound to follow First Circuit precedent, Hemp Council alone
forecloses the argument that a constitutional challenge is
needed to meet the imminence requirement.

In sum, this is no hypothetical case: The plaintiffs have
demonstrated with specific record evidence that they had
standing when they filed suit because a sufficiently imminent
threat of enforcement loomed.  The plaintiffs faced the choice
between risking criminal prosecution, winding down their
operations, or taking significant and costly compliance measures
that may not even eliminate the threat.  This choice "between
abandoning [their] rights or risking prosecution . . . is 'a
dilemma that it was the very purpose of the Declaratory Judgment
Act to ameliorate.'" MedImmune, 549 U.S. at 129 (quoting Abbott
Labs., 387 U.S. at 152).

**B. Cross-Motions for Summary Judgment**

The parties' cross-motions for summary judgment raise two legal questions: (1) whether the 2018 OLC Opinion is subject to review under the APA as final agency action, and (2) whether the Wire Act applies to non-sports gambling.[6] I analyze each question in turn.

**a. Final Agency Action**

The APA entitles an aggrieved party to judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. An action is final if "the agency has completed its decisionmaking process . . . [and] the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992); Trafalgar Capital Assocs., Inc. v. Cuomo, 159 F.3d 21, 35 (1st Cir. 1998). The Supreme Court has emphasized that the APA "creates a 'basic presumption of judicial review [for] one suffering legal wrong because of agency action.'" Weyerhaeuser

---

[6]    As I have noted, the Lottery Commission also contends that the Wire Act does not apply to the State, its employees, or its vendors. The Wire Act imposes liability on "[w]hoever" engages in the gambling business and that term is defined in the Dictionary Act to exclude the sovereign, the argument goes. See 1 U.S.C. § 1. The Government initially refused to respond to this contention, but after I invited it to brief the issue, it argued against the Commission's construction. Given that I construe the Wire Act to be limited to sports gambling, I need not reach the viability of the Commission's Dictionary Act argument.

Co. v. U.S. Fish & Wildlife Serv., 139 S. Ct. 361, 370 (2018)

(quoting Abbott Labs., 387 U.S. at 140).

The finality requirement for an APA claim is satisfied if
"a decision is a 'definitive statement of the agency's position
and [has] a direct and immediate effect on the day-to-day
business' of the complaining parties." Sig Sauer, Inc. v.
Brandon, 826 F.3d 598, 600 n.1 (1st Cir. 2016) (quoting FTC v.
Standard Oil Co., 449 U.S. 232, 241 (1980)) (internal
alterations omitted); cf. Hawkes, 136 S. Ct. at 1813.  The
Government does not challenge the Lottery Commission's
contentions that the 2018 OLC Opinion represents the culmination
of the Justice Department's review of the Wire Act and is a
"definitive statement of [the agency's] position."  See Standard
Oil, 449 U.S. at 241.  Thus, the sole issue I must address is
whether the 2018 Opinion and the accompanying Enforcement
Directive will also "directly affect the parties."  See
Trafalgar Capital, 159 F.3d at 35.

The Government argues that the 2018 OLC Opinion and the
Enforcement Directive will not have a direct effect on the
Lottery Commission unless and until it is indicted.  I disagree.
The State derives substantial revenue from its lottery
operations.  The final agency action requirement has not been
construed to require litigants in the Commission's position to
choose between abandoning an otherwise lawful and productive

24

activity and facing a credible threat of "serious criminal and civil penalties." Hawkes, 136 S. Ct. at 1815 (quoting Abbott Labs., 387 U.S. at 153). Here, because the threat of prosecution the plaintiffs face is substantial, that threat alone satisfies the direct effect component of the final agency action test.

The 2018 OLC Opinion will also have an immediate adverse effect on the Commission even if no indictment issues. The 2011 OLC Opinion explicitly gave businesses engaged in non-sports gambling a "reasonable reliance" defense to prosecution under the Wire Act. See 2018 OLC Opinion at 23 n.19 ("An individual who reasonably relied upon our 2011 Opinion may have a defense for acts taken in violation of the Wire Act after the publication of that opinion and prior to the publication of this one.") (citing United States v. Pa. Indus. Chem. Corp., 411 U.S. 655, 673-74 (1973)); cf. United States v. Ledee, 772 F.3d 21, 31 (1st Cir. 2014) (observing that "criminal prosecution may be barred [where] government misled defendant on whether charged conduct was criminal") (citing Pa. Indus., 411 U.S. at 674). That defense will no longer be available to the Commission once the Department of Justice begins to enforce the 2018 Opinion against entities engaged in non-sports gambling. Thus, even if the Commission is not immediately indicted, its position will become far more perilous if the 2018 OLC Opinion is allowed to

stand.  Cf. Hawkes, 136 S. Ct. at 1815 (finding final agency
action because, inter alia, it "deprive[d] respondents of a
five-year safe harbor from liability under the [statute]").

Finally, the 2018 OLC Opinion also has an adverse effect on
the Commission that does not depend upon any effort by the
Department of Justice to enforce the opinion.  Section 1084(d)
of the Wire Act provides:

> When any common carrier, subject to the jurisdiction
> of the Federal Communications Commission, is notified
> in writing by a Federal, State, or local law
> enforcement agency, acting within its jurisdiction,
> that any facility furnished by it is being used or
> will be used for the purpose of transmitting or
> receiving gambling information in interstate or
> foreign commerce in violation of Federal, State or
> local law, it shall discontinue or refuse, the
> leasing, furnishing, or maintaining of such facility,
> after reasonable notice to the subscriber . . . .

18 U.S.C. § 1084(d).  In other words, once the 2018 OLC Opinion
was published, any law enforcement agency could notify in
writing a common carrier (such as a telephone or internet
service provider) that it was providing services "used for the
purpose of transmitting or receiving gambling information" in
violation of the Wire Act.  Upon receipt of such notice, the
provider would be compelled to "discontinue or refuse" that
service to the offending subscriber.

The Government has not represented that it will forebear
from enforcing § 1084(d).  The Enforcement Directive, which
instructs Department of Justice attorneys to "adhere to OLC's

[2018] interpretation," announces that they "should refrain from applying Section 1084(a) in criminal or civil actions to persons who engaged in conduct violating the Wire Act in reliance on the 2011 OLC Opinion." See Enforcement Directive, Doc. No. 2-6. It extends no such "internal exercise of prosecutorial discretion" to § 1084(d). See id. Before the 2018 Opinion, federal law enforcement could not invoke the Wire Act to disconnect the Lottery Commission from the internet. Now it can. And that is a legal consequence.

The 2018 OLC Opinion is a definitive statement concerning the Justice Department's interpretation of the Wire Act, and the opinion has a direct and immediate impact on the Commission's operations. See Sig Sauer, 826 F.3d at 600 n.1; see also Standard Oil, 449 U.S. at 242 (explaining that regulations in Abbott Labs had sufficient legal effect because they forced manufacturers to choose between risking criminal and civil penalties for noncompliance and drastically altering their business and investment practices) (citing Abbott Labs., 387 U.S. at 152-53). Accordingly, the opinion constitutes final agency action without an adequate alternative to APA review.[7]

---

[7]    The Government also contends that the Lottery Commission does not state an APA claim because it has an "adequate remedy in a court," see 5 U.S.C. § 704, in the form of a motion to dismiss any future indictment. But this argument is unavailing because a party need not wait to be indicted to seek judicial relief when the plaintiff is faced with a substantial risk of

### b.  The Wire Act

The plaintiffs argue that the OLC got it right when it
concluded in the 2011 Opinion that the Act applies only to
sports gambling.  The Government defends the 2018 Opinion and
claims that all but one of the Act's prohibitions apply to any
form of gambling.  Each side maintains that its interpretation
is compelled by the plain language of § 1084(a).  I examine
these arguments after first addressing the plaintiffs'
contention that controlling First Circuit precedent has already
resolved the dispute.

### 1.  First Circuit Caselaw

The plaintiffs argue that the First Circuit has
authoritatively ruled that the Wire Act applies only to sports
gambling.  It has not.  The plaintiffs confuse the court's
dictum in United States v. Lyons, 740 F.3d 702 (1st Cir. 2014),
with binding precedent.

The defendants in Lyons were convicted of two Wire Act
violations in 2012.  See id. at 712.  At trial, the court
admitted evidence suggesting that the defendants had accepted
sports bets, and it instructed the jury that the Wire Act

---

prosecution.  See Hawkes, 136 S. Ct. at 1815 ("As we have long
held, parties need not await enforcement proceedings before
challenging final agency action where such proceedings carry the
risk of 'serious criminal and civil penalties.'") (quoting
Abbott Labs., 387 U.S. at 153).

applied only to sports gambling.  See id. at 718.  The
defendants nevertheless argued on appeal that the Government had
produced insufficient evidence to support the convictions
because "some evidence at trial showed that [the defendants'
business] also accepted bets on casino games and other forms of
gambling not covered by the Wire Act."  Id.  In rejecting this
argument, the court of appeals began by declaring that "[t]he
Wire Act applies only to 'wagers on any sporting event or
contest,' that is sports betting."  Id. (quoting 18 U.S.C.
§ 1084(a)).  But the court did not uphold the convictions on
that basis.  Instead, it reasoned that because the Wire Act
applied to sports gambling and the record included sufficient
evidence to support a finding that the defendants had accepted
sports bets, it did not matter that they had also accepted non-
sports bets.  See id.

        The logical structure on which the court's ruling on this
point is based is self-evident.  It begins with two legal
propositions: (1) the Wire Act applies to sports gambling; and
(2) the convictions stand if sufficient evidence was produced at
trial to support a conclusion that the defendants accepted
sports bets, even if they also accepted non-sports bets.  See
id.  The court examined the record and concluded that the
evidence permitted a conclusion that the defendants had accepted
sports bets.  See id.  The court's additional statement that the

                                29

Wire Act applied only to sports gambling played no role in its decision.  Therefore, that statement is mere dictum, not a holding that binds lower courts.  See Rossiter v. Porter, 357 F.3d 26, 31 (1st Cir. 2004).

Although the First Circuit has explained that "considered dicta" is also ordinarily binding, at least where it "is of recent vintage and not enfeebled by any subsequent statement," McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991), the First Circuit's dictum in Lyons does not qualify as "considered."  First, the trial court instructed the jury that the Wire Act applied only to sports gambling.  And the Government, constrained by the 2011 OLC Opinion, did not contest the trial court's instruction at trial or on appeal.  As a result, the court of appeals did not receive the benefit of briefing on the issue.

Second, because the trial court's instruction went unchallenged, and the circuit court's statement that the Wire Act applies only to sports gambling was not necessary to its decision, the court understandably did not attempt to explain how its statement resulted from the text of the Wire Act. Instead, it merely cited to the only circuit court decision to address the issue, which supported the trial court's instruction.  See Lyons, 740 F.3d at 718 (citing In re MasterCard Int'l Inc., 313 F.3d 257, 263 (5th Cir. 2002)).

Under these circumstances, I cannot defer to the circuit court's
unconsidered dictum in Lyons without first undertaking my own
independent analysis of the issue.

### 2. Ambiguity

Most statutory text can be readily understood by a careful
reader.  In such cases, the court's mission is clear: It must
give the statute its plain meaning.  See Schindler Elevator
Corp. v. U.S. ex rel. Kirk, 563 U.S. 401, 412 (2011).
Sometimes, however, words have multiple meanings even when read
in context, and legislators fail to achieve syntactic precision.
See, e.g., Graham Cty. Soil & Water Conservation Dist. v. U.S.
ex rel. Wilson, 545 U.S. 409, 417 (2005); Jones v. Donnelley &
Sons Co., 541 U.S. 369, 377 (2004).  Even proper syntax can
produce ambiguous text when it leaves a statute as a whole
internally incoherent.  See, e.g., Concrete Pipe & Prods. of
Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508
U.S. 602, 624, 627 (1993) (treating as ambiguous statute
containing terms "inconsistent with each other on any reading");
Harvey v. Veneman, 396 F.3d 28, 40 (1st Cir. 2005) (statute
"lacks coherence and consistency, creating ambiguity concerning
Congress' intent").  In such cases, a court cannot blind itself
to permissible sources of meaning.  It must instead undertake a
nuanced and comprehensive review of all relevant evidence in an
attempt to give the statute as a whole a fair reading.  See

Graham, 545 U.S. at 417–22; Jones, 541 U.S. at 377–83; see also
Bond v. United States, 134 S. Ct. 2077, 2088 (2014) (employing
"background principles" to construe ambiguous text).  Bearing
these lessons in mind, I begin by determining whether § 1084(a)
is ambiguous.

Although the 2011 and 2018 OLC opinions end up in very
different places, they proceed from common ground.  Both agree
that § 1084(a) includes two general clauses that each, in turn,
prohibit two types of wire transmissions.  See 18 U.S.C.
§ 1084(a).  The first clause bars anyone engaged in the business
of gambling from knowingly using the wires "for the transmission
in interstate or foreign commerce of bets or wagers or
information assisting in the placing of bets or wagers on any
sporting event or contest."  Id.  The second clause prohibits
any such person from using the wires "for the transmission of a
wire communication which entitles the recipient to receive money
or credit as a result of bets or wagers, or for information
assisting in the placing of bets or wagers."  Id.[8]

---

[8]     The Lottery Commission stands alone in arguing that
§ 1084(a) consists of three clauses.  It maintains that the
phrase "or for information assisting in the placing of bets or
wagers" is not part of the second clause but a third independent
clause.  According to this reading, the third clause
criminalizes the use of the wires "to seek information that
would assist [a gambling enterprise] in the placing of bets or
wagers."  Doc. No. 58 at 16.  I am unpersuaded by the
Commission's argument because it either creates a conflict
between the second and fourth prohibitions (assuming the sports-

The limiting phrase "on any sporting event or contest" immediately follows and plainly modifies the second prohibition in the first clause, which prohibits the transmission of "information assisting in the placing of bets or wagers."  The question is whether this sports-gambling modifier also applies to the other three prohibitions.  Should each reference to "bets or wagers" be interpreted to mean "bets or wagers on any sporting event or contest"?  Or is the phrase "bets or wagers" in the first, third, and fourth prohibitions untethered to the sports-gambling modifier, such that those prohibitions apply to all forms of gambling?  Each party contends that the plain language of § 1084(a) mandates its position.  I conclude that the text does not provide an unambiguous answer to this question.

Starting with the first clause, the Government contends that the syntactic structure of the clause and the rule of the last antecedent make it plain that the sports-gambling modifier does not apply to the first prohibition ("the transmission . . . of bets or wagers").  The canon of statutory construction known as the rule of the last antecedent counsels that when a

_____

gambling modifier applies only to the former) or renders the fourth prohibition superfluous (if the sports-gambling modifier applies to both prohibitions).  Given these conflicts, I agree with NeoPollard, the Government, and both OLC opinions that the two-clause construction makes better sense of the statute and avoids these problems.

33

qualifying phrase has multiple antecedents, the phrase
ordinarily qualifies only the final antecedent, here the second
prohibition.[9]  See Lockhart v. United States, 136 S. Ct. 958, 962
(2016); 2A Norman J. Singer & J.D. Shambie Singer, Sutherland on
Statutes and Statutory Construction § 47:33 (7th ed. 2014);
Antonin Scalia & Bryan A. Garner, Reading Law: The
Interpretation of Legal Texts 144 (2012).  Although applying the
rule is "quite sensible as a matter of grammar," it "is not an
absolute and can assuredly be overcome by other indicia of
meaning." Barnhart v. Thomas, 540 U.S. 20, 26 (2003) (internal
quotation marks omitted).  Nor does the rule apply "in a
mechanical way where it would require accepting 'unlikely
premises.'" Paroline v. United States, 572 U.S. 434, 447 (2014)
(quoting United States v. Hayes, 555 U.S. 415, 425 (2009)).

The plaintiffs respond with their own canon of
construction.  Relying on the series-qualifier canon, they argue
that the sports-gambling modifier clearly applies to both

---

[9]   The 2018 OLC Opinion recognizes that the last antecedent
canon does not really apply here, because the modifier at issue
is not a pronoun.  See 2018 OLC Opinion at 8 n.10; see also
Scalia & Gardner, Reading Law at 152 ("Strictly speaking, only
pronouns have antecedents . . . .").  Instead, a closely related
canon known as the "nearest reasonable referent" canon provides
the real support for the Government's position because the
modifier here is an adjectival phrase.  See Scalia & Gardner,
Reading Law at 152 (this canon "also applies to adjectives,
adverbs, and adverbial or adjectival phrases").  Courts,
however, often use the two canons interchangeably, so I follow
the OLC's lead and treat the issue as a last-antecedent problem.

prohibitions in the first clause.  This canon provides that a
modifier appearing at the beginning or end of a series of terms
modifies the entire series where "the natural construction of
the language demands that the clause be read as applicable to
all."  Paroline, 572 U.S. at 447 (quoting P.R. Railway, Light &
Power Co. v. Mor, 253 U.S. 345, 348 (1920)); see United States
v. Bass, 404 U.S. 336, 339-40 (1971) (applying series-qualifier
canon where modifier "undeniably applies to at least one
antecedent" and "makes sense with all").

      I am not persuaded that the language and syntactic
structure of § 1084(a)'s first clause compels the use of either
canon, because § 1084(a) lacks punctuation that would clearly
signal which canon applies.  See Scalia & Garner, Reading Law at
161 ("Punctuation in a legal text . . . will often determine
whether a modifying phrase or clause applies to all that
preceded it or only to a part."); see also 1A Sutherland on
Statutory Construction § 21:15 (similar).  For instance, a comma
before the conjunction "or" separating the phrases "bets or
wagers" and "information assisting in the placing of bets or
wagers" would demonstrate that the rule of the last antecedent
applies.  See 1A Sutherland on Statutory Construction § 21:15
(comma separating two members of a list indicates they are to be
treated separately rather than as a whole); cf. Lockhart, 136 S.
Ct. at 962 (applying rule of last antecedent to statute that had

commas separating each antecedent).  Without it, the
appropriateness of the last antecedent canon is unclear.

Conversely, a comma placed directly before the phrase "on
any sporting event or contest" would confirm that the series-
qualifier canon applies.  See 2A Sutherland on Statutory
Construction § 47:33 ("A qualifying phrase separated from
antecedents by a comma is evidence that the qualifier is
supposed to apply to all the antecedents instead of only to the
immediately preceding one."); Am. Int'l Grp., Inc. v. Bank of
Am. Corp., 712 F.3d 775, 782 (2d Cir. 2013).  In that instance,
the sports-gambling modifier would plainly apply to both
prohibitions in the first clause.

The absence of clarifying punctuation prevents the first
clause from being a textbook application of either canon.
Either reading is consistent with the syntax of the first
clause, even if neither creates a perfectly wrought text.  The
OLC came to the same conclusion in 2011, noting that the first
clause "can be read either way" because it lacks punctuation
that would have made only one interpretation plausible.  See
2011 OLC Opinion at 5.  The phrase "on any sporting event or
contest" may modify one prohibition, or both.  Accordingly, the
clause is ambiguous.  Cf. Graham, 545 U.S. at 419 n.2 ("[The
statute] is ambiguous because its text, literally read, admits
of two plausible interpretations.").

Consistent with the 2018 OLC Opinion, the Government also argues that § 1084(a)'s second clause is plainly unconstrained by the sports-gambling modifier because "[b]asic grammar compels the conclusion that [it] . . . does not travel forwards to modify either prohibition of the second clause." Doc. No. 61 at 15; accord 2018 OLC Opinion at 11. As the Government sees it, because the sports-gambling modifier does not appear anywhere in the second clause, neither of the clause's prohibitions can possibly be subject to it.

The plaintiffs respond by pointing to an example in § 1084(a) itself that defies the "basic grammar" on which the Government's argument is based. Section 1084(a)'s first clause is expressly limited to transmissions "in interstate or foreign commerce" but the transmissions prohibited by the second clause do not contain this limitation. Nevertheless, both OLC opinions agree that the interstate-commerce modifier is borrowed from the first clause and applied to the transmissions prohibited by the second clause. See 2011 OLC Opinion at 7; 2018 OLC Opinion at 13. Indeed, the Supreme Court has suggested as much. See Bass, 404 U.S. at 341 & n.8 (citing Wire Act for proposition that, consistent with approach in other federal statutes, "in commerce or affecting commerce" applies to all three parts of preceding phrase "receives, possesses, or transports" in Title VII of Omnibus Crime Control and Safe Streets Act). Otherwise, the

second clause would sweep in purely intrastate wire
communications, giving the statute "a curious reach." See id.
at 340. As the OLC concluded in 2011, the omission of the
interstate-commerce modifier from the second clause "suggests
that Congress used shortened phrases in the second clause to
refer back to terms spelled out more completely in the first
clause." 2011 OLC Opinion at 7. I agree with the 2011 OLC
Opinion that this instance of borrowing by the drafters of §
1084(a) gives textual support for similarly importing the
sports-gambling modifier into the second clause.

The Government's arguments for discounting the interpretive
force of the interstate-commerce modifier fall short. According
to the 2018 Opinion, the interstate-commerce modifier is
different because, unlike the sports-gambling modifier, which
appears "midway through the list" of the Wire Act's
prohibitions, the interstate-commerce modifier appears at the
beginning of the Act's four prohibitions. See 2018 OLC Opinion
at 13. This argument is flawed. The fact that the modifier
precedes the four references to "bets or wagers" is irrelevant
because it does not modify "bets or wagers." Instead, the
interstate-commerce modifier immediately limits the term
"transmission" in the first clause. Viewed properly, the use of
the interstate-commerce modifier supports the plaintiffs'
argument. Like the statute's use of the sports-gambling

modifier, the interstate-commerce modifier follows the term it
modifies in the first clause ("transmission") and is borrowed to
modify the same term in the second clause.  This consistent
pattern of borrowing indicates that Congress used shorthand in
the second clause to refer to terms delineated "more completely
in the first clause."  See 2011 OLC Opinion at 7.[10]

The Government also contends that the constitutional
avoidance doctrine strengthens the rationale for applying the
interstate-commerce modifier across the entire statute to avoid
doubts about Congress's regulatory authority.  The same is
obviously not the case with the sports-gambling modifier.  But
the doctrine of constitutional avoidance is not the only reason
to import the modifier into the second clause.  The text and
context provide sufficient indicia that the second clause
borrows that term from the first clause.  Cf. Bass, 404 U.S. at
338-47 (applying traditional canons of constructions, including
coherency, to extend interstate-commerce modifier to all three
statutory prohibitions while disclaiming reliance on
constitutional avoidance).  Thus, § 1084(a)'s second clause is

---

[10]    The Government is also wrong that the interstate-commerce
modifier appears before the first prohibition in § 1084(a).  The
four prohibitions are all prohibitions on uses of a "wire
communication facility," and the interstate-commerce modifier
appears in the first prohibition ("the transmission in
interstate or foreign commerce of bets or wagers"), not prior to
the prohibition.  See 18 U.S.C. § 1084(a) (emphasis added).

ambiguous because both of its prohibitions can be read either to apply only to sports gambling or to apply broadly to all forms of gambling.

The principal problem with the 2018 OLC Opinion is that it assigns nearly controlling weight to a reading of § 1084(a) that is suggested, but not required, by the rule of the last antecedent and a general conception of what the OLC calls "basic grammar." Other potentially relevant sources of meaning are then dismissed as inconsequential because they do not result in "patent absurdity." 2018 OLC Opinion at 14. This is not the approach to statutory construction that Supreme Court precedent requires. See, e.g., Lockhart, 136 S. Ct. at 965 ("This court has long acknowledged that structural or contextual evidence may 'rebut the last antecedent inference.'") (quoting Jama v. Immigration & Customs Enf't, 543 U.S. 335, 344 n.4 (2005)); Paroline, 572 U.S. at 447 (rule of last antecedent not followed because it would require acceptance of "unlikely premises") (quoting Hayes, 555 U.S. at 425). Instead, where, as here, a statute is ambiguous, a court must look at more than grammar to determine its meaning. Therefore, I now turn to the significant contextual evidence that calls the OLC's current interpretation into question.

### 3.    Context, Structure, and Coherence

In determining whether § 1084(a) is limited to sports
gambling, I am guided by the rule of construction that
"[s]tatutes should be interpreted 'as a symmetrical and coherent
regulatory scheme.'" Mellouli v. Lynch, 135 S. Ct. 1980, 1989
(2015) (quoting FDA v. Brown & Williamson Tobacco Corp., 529
U.S. 120, 133 (2000)).  Limiting the Wire Act to sports gambling
conforms to this rule.  It avoids significant coherence problems
that result from the OLC's current interpretation and it
construes the Wire Act in harmony with another gambling statute
that Congress enacted the same day as the Wire Act.

The OLC's 2018 Opinion, by contrast, produces an unlikely
reading of § 1084(a) that the 2011 OLC Opinion avoids.  Under
the current interpretation, the section's first clause prohibits
transmissions of all bets or wagers but bars transmissions of
information that assist the placement of only those bets or
wagers that concern sports.  The incongruous results that follow
from this interpretation are problematic because, as the OLC
explained in 2011 when it rejected this construction, "it is
difficult to discern why Congress, having forbidden the
transmission of all kinds of bets or wagers, would have wanted
to prohibit only the transmission of information assisting in
bets or wagers concerning sports." See 2011 OLC Opinion at 5.
Even in its current opinion, the OLC continues to recognize that

"[t]here is a logic to this reasoning." See 2018 OLC Opinion at
14. This logic, however, did not persuade the OLC in 2018 for
two reasons: first, because Congress might have wanted to
specifically target transmissions of information on sports bets
or wagers given the special importance of such information to
this form of gambling; and second, because "Congress might have
been worried that an unfocused prohibition on transmitting any
information that 'assisted' in any sort of gambling whatsoever
would criminalize a range of speech-related conduct." Id. at
14-15. These arguments are unpersuasive. Such speculation may
show that the OLC's 2018 interpretation is not patently absurd.
But it does not establish that its reading is a better
construction of an ambiguous text.

The OLC's current construction of the second clause gives
rise to an even more serious coherence problem. If, as the OLC
now contends, the clause is read without the sports-gambling
modifier, the two clauses of § 1084(a) cannot easily be
reconciled: The second clause prohibits transmissions that
enable a recipient to receive payment for information that
facilitates both sports and non-sports gambling, but the first
clause prohibits only transmissions of sports-related
information. In other words, the OLC's current interpretation
incongruously permits information transmissions that facilitate
non-sports gambling in the first clause while criminalizing

42

transmissions that enable a person to receive payment for the same transmissions in the second clause.

The Government's only explanation for this inconsistency is that Congress might have had a special interest in preventing gambling-related payouts via the wires, regardless of whether the money was for lawful or unlawful activities.  This rationale is inadequate.  It does not explain why a rational legislator would have designed a statute that prevents a lawful gambling business from sending or receiving payment for a business activity that the statute does not prohibit.  It is bizarre to authorize an activity but prohibit getting paid for doing it.

Consider a vendor who contracts with an online casino to solicit players.  The contract guarantees the vendor payment for every new player who bets $100 at the site.  The Wire Act permits the vendor to send emails to players enticing them and explaining the site's games.  But, under the OLC's current interpretation, the Act prohibits the vendor from receiving (and the casino from sending) money transfers for supplying that information.  That makes little sense.  The incoherence that plagues the statute when the sports-gambling modifier is not imported into the second clause significantly undermines the OLC's current construction of § 1084(a).  Limiting the entire section to sports gambling renders the statute coherent and makes the 2011 Opinion the better reading of the text.

43

Reading § 1084(a) to apply only to sports gambling also finds support in another gambling statute passed the same day as the Wire Act. Cf. United States v. Am. Bldg. Maint. Indus., 422 U.S. 271, 277 (1975) (looking to Federal Trade Commission Act to define term used in Clayton Act, in part because both statutes were passed by the same Congress and designed to deal with closely related aspects of the same problem); Kokoszka v. Belford, 417 U.S. 642, 650 (1974) (noting that it is relevant to consider related statutes when interpreting ambiguous text). Like the Wire Act, the Interstate Transportation of Wagering Paraphernalia Act was passed by Congress on August 31, 1961. See 107 Cong. Rec. 17,694 (1961). The Paraphernalia Act prohibits carrying paraphernalia in interstate commerce that is to be used in "(a) bookmaking; or (b) wagering pools with respect to a sporting event; or (c) in a numbers, policy, bolita, or similar game." 18 U.S.C. § 1953(a).[11] On the same day the Paraphernalia Act outlawed carrying equipment for use in

---

[11]   As the Department of Justice explained at the time, "numbers, policy, and bolita . . . are similar types of lotteries wherein an individual purchases a ticket with a number." Legislation Relating to Organized Crime: Hearings on H.R. 468, H.R. 1246, H.R. 3021, H.R. 3022, H.R. 3023, H.R. 3246, H.R. 5230, H.R. 6571, H.R. 6572, H.R. 6909, H.R. 7039 Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 87th Cong. 350 (1961) (statement of Herbert Miller, Assistant Att'y Gen., Crim. Div.).

"numbers, policy, bolita or similar game," Congress passed the
Wire Act with no such reference to lottery-style games.

That these two gambling statutes were passed the same day
sends a strong contextual signal concerning the Wire Act's
scope.  The Paraphernalia Act demonstrates that when Congress
intended to target non-sports gambling it used clear and
specific language to accomplish its goal.  In other words, when
Congress wished to achieve a specific result, "it knew how to
say so."  Rubin v. Islamic Republic of Iran, 138 S. Ct. 816, 826
(2018).  The absence of similar language in the accompanying
Wire Act supports the plaintiffs' position that the Wire Act is
limited to sports gambling.  Cf. United States v. Fabrizio, 385
U.S. 263, 266–67 (1966) (interpreting scope of Paraphernalia Act
by citing Wire Act for proposition that "[i]n companion
legislation where Congress wished to restrict the applicability
of a provision to a given set of individuals, it did so with
clear language").

The Government presents its own contextual arguments based
on other sections of the Wire Act.  Those arguments do not
withstand scrutiny.  Section 1084(b) creates a safe harbor for
interstate wire communications transmitting (1) "information for
use in news reporting of sporting events or contests," and (2)
"information assisting in the placing of bets or wagers on a
sporting event or contest" between two states where "betting on

45

that sporting event or contest" is legal.  18 U.S.C. § 1084(b).
The Government maintains that § 1084(b) supports its contention
that Congress repeated the phrase "sporting event or contest"
when it wanted to apply it beyond its nearest referent.  I am
unpersuaded by the Government's argument.  Section 1084(a)
repeats the same phrase ("bets or wagers") four times, so the
question is whether Congress used that phrase as a shorthand for
"bets or wagers on a sporting event or contest."  By contrast,
§ 1084(b) has varied formulations of phrases followed by the
sports-gambling modifier.  See id. ("news reporting of sporting
events or contests," "bets or wagers on a sporting event or
contest," and "betting on that sporting event or contest")
(emphasis added).  Unlike the recurrent "bets or wagers," those
diverse phrases are not susceptible to an abridged reference.
As a result, § 1084(b) requires that the modifier be repeated.

      The Government also contends that because § 1084(d) is not
limited to sports gambling, neither is § 1084(a).  That reading
misunderstands the role of § 1084(d).  Section 1084(d) requires
a common carrier to discontinue the operation of a wire facility
if it is notified that the facility is being used "for the
purpose of transmitting or receiving gambling information in
interstate or foreign commerce in violation of Federal, State or
local law."  18 U.S.C. § 1084(d).  The provision thus
incorporates federal, state, and local gambling laws that go

beyond the scope of § 1084(a).  That § 1084(d) is broader in this regard tells us nothing about the scope of the prohibitions in § 1084(a).

In summary, although § 1084(a) reasonably can be read either to apply only to sports gambling, as the OLC concluded in 2011, or to apply to both sports and non-sports gambling, as the OLC concluded in 2018, a careful contextual reading of the statute supports the view that § 1084(a) applies only to sports gambling.

### 4.   Legislative History

The Government's amici argue that the Wire Act's legislative history supports the OLC's current interpretation of the Wire Act.  If anything, the legislative history supports the plaintiffs' position.

The original version of § 1084(a) would have imposed criminal penalties on anyone who "leases, furnishes, or maintains any wire communication facility with intent that it be used for the transmission in interstate or foreign commerce of bets or wagers, or information assisting in the placing of bets or wagers, on any sporting event or contest, or knowingly uses such facility for any such transmission."  S. 1656, 87th Cong. § 2 (1961) (as introduced) (emphasis added) (excerpt appended to

this opinion as Appendix A).[12]  It is undisputed that the
original text was unequivocally limited to sports gambling.  See
2018 OLC Opinion at 16; 2011 OLC Opinion at 6.

   After conducting hearings in June 1961, the Senate
Judiciary Committee, in collaboration with the Department of
Justice, proposed an amendment to the bill.  See S. Rep. No. 87-
588, at 1-2 (1961); Report of Proceedings: Hearing Before the S.
Comm. on the Judiciary, Exec. Sess., 87th Cong. 54-55 (1961).
Reflected in the enacted text, the amendment made three
modifications to § 1084(a): (1) it changed the class of covered
persons to those who are "engaged in the business of betting or
wagering," (2) it added a second clause prohibiting payment-

_____

[12]   A brief overview of the Wire Act's travel through Congress
is useful for context.  The legislative proposal came from the
Department of Justice in April 1961.  See S. Rep. No. 87-588, at
3 (1961).  The bill was introduced in the Senate as S. 1656 and
in the House as H.R. 7039, respectively by Senator James
Eastland and Representative Emanuel Celler, each house's
Chairman of the Committee on the Judiciary.  See S. 1656, 87th
Cong. (as introduced, April 18, 1961); H.R. 7039, 87th Cong. (as
introduced, May 15, 1961).  Following hearings held in June
1961, the Senate Committee on the Judiciary suggested an
amendment to S. 1656, which resulted from a collaboration with
the Department of Justice.  See S. Rep. No. 87-588, at 1-2
(1961); Report of Proceedings: Hearing Before the S. Comm. on
the Judiciary, Exec. Sess., 87th Cong. 54-55 (1961).  After the
amended version of S. 1656 passed the Senate at the end of July,
the bill was referred to the House Judiciary Committee.  See S.
1656, 87th Cong. (referred in House, July 31, 1961).  The House
passed S. 1656 on August 21, 1961 with minor amendments, in
which the Senate concurred on August 31, 1961.  See 107 Cong.
Rec. 16,533, 16,537, 17,694 (1961).  President John F. Kennedy
signed the bill into law on September 13, 1961.  See Pub. L. No.
87-216, 75 Stat. 491 (1961).

Case 1:19-cv-00163-PB   Document 81   Filed 06/03/19   Page 49 of 63

related transmissions, and (3) it removed the commas before and
after the phrase "or information assisting in the placing of
bets or wagers" in the first clause.  See S. 1656, 87th Cong.
(as reported in Senate, July 24, 1961) (excerpt appended to this
opinion as Appendix B).  As I have explained, without those
commas, it is not clear whether both prohibitions in the first
clause are limited to sports gambling.

The Government's amici contend that the legislative history
shows that the removal of the commas was intended to expand the
scope of § 1084(a) to cover all gambling.  They principally rely
on three pages from the transcript of the hearing before the
Senate Committee on the Judiciary on June 20, 1961.  See The
Attorney General's Program to Curb Organized Crime and
Racketeering: Hearings on S. 1653, S. 1654, S. 1655, S. 1656, S.
1657, S. 1658, S. 1665 Before the S. Comm. on the Judiciary,
87th Cong. 277-79 (1961).  Those pages reflect an exchange
between Senator Carey Kefauver and Herbert Miller, the Assistant
Attorney General in charge of the Department's Criminal
Division.  See id.  According to the Government's amici, Senator
Kefauver suggested three changes to the original text during the
exchange: (1) changing the covered persons to those engaged in
the business of gambling; (2) adding prohibitions to cover
transmissions of money; and (3) expanding the scope of the bill
from sports gambling to all forms of gambling.  See id.  The

Committee's subsequent amendment, discussed above, was intended
to incorporate all three changes, the argument goes.  Whereas
the changed wording of the bill reflected the first two changes,
punctuation purportedly accomplished the third.  According to
the Government's amici, the deletion of the two commas "was an
efficient way" to accommodate Senator Kefauver's proposal for
the Wire Act to encompass all bets and wagers, not just sports-
related ones.  See Doc. No. 68 at 130.

The idea that this change in punctuation was intended to
broaden the scope of § 1084(a) is too speculative to carry any
weight.  First, the legislative record suggests, if anything,
that the omission of the second comma (appearing directly before
the phrase "on any sporting event or contest") was inadvertent.
In the original version of the bill, this comma carried the
weight of signaling that the proposed law prohibited only
transmissions related to sports gambling.  See supra at 35-36.
The amendment, as reported in the Senate, contained a redline
version showing what was stricken from the original text.  See
Appendix B.  That redline, however, incorrectly reports that the
second comma was never a part of the original text, suggesting
that its omission from the amended version of the bill was not
an intentional act.  Compare Appendix A, with Appendix B.

Second, in reporting on the amendment, the Senate Judiciary
Committee explained that it was offered to alter the class of

covered persons and expand its prohibitions to include "money or
credit" communications.  See S. Rep. No. 87-588, at 2 (1961).
The report does not even hint that by omitting a single comma
from the original bill, the Committee also intended to
dramatically expand the scope of prohibited transmissions from
"bets or wagers . . . on any sporting event or contest" to all
"bets or wagers."  See id.  Adopting the argument of the
Government's amici on this point requires a speculative leap
that I am unwilling to make.  Cf. Whitman v. Am. Trucking
Ass'ns, 531 U.S. 457, 468 (2001) (recognizing in different
context that Congress does not "hide elephants in mouseholes").

     Third, rather than guess whether the amendment's omission
of a single comma was intended to radically expand the proposed
law's scope, it makes more sense to focus on the description of
the amendment that the Department of Justice provided to the
Judiciary Committee while it was under consideration.  In that
description, Deputy Attorney General Byron White explained that,
as amended:

> [The Wire Act] is aimed now at those who use the wire
> communication facility for the transmission of bets or
> wagers in connection with a sporting event and also
> who use the facility for the transmission of the
> winnings, as suggested by Senator Kefauver.

Report of Proceedings: Hearing Before the S. Comm. on the
Judiciary, Exec. Sess., 87th Cong. 55 (1961) (emphasis added).
Consistent with the Committee's report, White confirmed that the

amendment incorporated Senator Kefauver's first two proposals
and suggested that, even as amended, the bill continued to be
limited to sports gambling.[13]  Compare id., with S. Rep. No. 87-
588, at 2 (1961).[14]  If the legislative history of § 1084(a) has
any relevance, it tends to subvert rather than support the
Government's interpretation of the statute.

—

In sum, while the syntax employed by the Wire Act's
drafters does not suffice to answer whether § 1084(a) is limited
to sports gambling, a careful contextual reading of the Wire Act

---

[13]    Deputy Attorney General White's explanation of the
amendment to the Judiciary Committee is also consistent with the
position the Department took when its representative responded
to the questions from Senator Kefauver that prompted the
amendment.  At that hearing, Assistant Attorney General Miller
indicated that the Department would have no objection to Senator
Kefauver's proposals to alter the class of covered persons and
expand the legislation to include payment-related transmissions.
See The Attorney General's Program to Curb Organized Crime and
Racketeering: Hearings on S. 1653, S. 1654, S. 1655, S. 1656, S.
1657, S. 1658, S. 1665 Before the S. Comm. on the Judiciary,
87th Cong. 277-79 (1961).  He did not, however, signal support
for the Senator's suggestion to expand the bill to cover non-
sports gambling.  Instead, he reiterated that the proposed
legislation was "limited to sporting events or contests."  Id.
at 278.

[14]    The Government's amici argue that White's views on the
final text are more accurately expressed in a September 1961
memorandum to the Bureau of the Budget, where his summary of the
Wire Act does not suggest that it was limited to sports
gambling.  See Doc. No. 61-1 at 6.  That memorandum post-dates
Congress's passage of the bill; it is not a relevant source of
legislative history.  In any event, White's summary is
equivocal.  It does not accurately report that one of the Act's
prohibitions plainly applies only to sports gambling.  See id.

52

as a whole reveals that the narrower construction proposed by
the 2011 OLC Opinion represents the better reading.  The Act's
legislative history, if anything, confirms this conclusion.
Accordingly, I construe all four prohibitions in § 1084(a) to
apply only to bets or wagers on a sporting event or contest.

### C.    Remedy

The Lottery Commission requests relief under both the APA
and the Declaratory Judgment Act, whereas NeoPollard seeks only
a declaratory judgment.  The plaintiffs' amici also urge me to
order nationwide injunctive relief.  I briefly address the scope
of the remedy available to the plaintiffs under each theory.

### a.    Declaratory Relief

The Declaratory Judgment Act provides that I "may declare
the rights and other legal relations of any interested party
seeking such declaration, whether or not further relief is or
could be sought."  28 U.S.C. § 2201(a).  It is "an enabling Act,
which confers a discretion on the courts rather than an absolute
right upon the litigant."  Wilton v. Seven Falls Co., 515 U.S.
277, 287 (1995) (internal quotation marks and citation omitted).
Here, declaratory relief is appropriate because the plaintiffs
face a credible threat of prosecution, their interests are
sufficiently affected, and a judgment will resolve the dispute.
See Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local
No. 2322, 651 F.3d 176, 188-90 (1st Cir. 2011).  As the First

Circuit has explained, where an agency has made a definitive interpretation of a criminal law, the Declaratory Judgment Act provides "a way to resolve the legal correctness of [the] position without subjecting an honest businessman to criminal penalties."  See Hemp Council, 203 F.3d at 5 (citation omitted).

The parties nevertheless disagree as to whether a declaratory judgment should be limited to the parties or have universal effect.[15]  The plaintiffs maintain that declaratory relief "necessarily extends beyond the [Commission] itself."  Doc. No. 58 at 21.  The Government contends that any declaratory relief must apply only to the parties to the case.  I agree with the Government.

Declaratory judgments do not bind non-parties.  The Act allows me to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C.

---

[15]    Nationwide relief, and in particular nationwide injunctions, have recently received significant judicial and academic attention.  Compare Trump v. Hawaii, 138 S. Ct. 2392, 2424 (2018) (Thomas, J., concurring), and Samuel Bray, Multiple Chancellors: Reforming the National Injunction, 131 Harv. L. Rev. 417 (2017) (questioning doctrinal, historical, and normative grounds for nationwide injunctions), with Pennsylvania v. Trump, 351 F. Supp. 3d 791, 830-35 (E.D. Pa. 2019), and Amanda Frost, In Defense of Nationwide Injunctions, 93 N.Y.U. L. Rev. 1065 (2018) (supporting the practice).  I use the term universal to refer to relief beyond the parties (the "who") and nationwide to refer to geographic scope (the "where").  Cf. Howard M. Wasserman, "Nationwide" Injunctions Are Really "Universal" Injunctions and They Are Never Appropriate, 22 Lewis & Clark L. Rev. 335, 349 (2018).

§ 2201(a) (emphasis added).  It thus limits me to declaring the
rights and legal relations of the plaintiffs seeking the
declaration.  It "does not contain any provisions indicating
that declaratory judgments are authoritative vis-à-vis
nonparties to the litigation." Mass. Delivery Ass'n v. Coakley,
671 F.3d 33, 48 n.12 (1st Cir. 2012).  The idea that a
declaration necessarily binds non-parties finds no support in
the statute or in caselaw.[16]  Accordingly, I decline to give my
declaratory judgment the broader scope that the plaintiffs seek.

It is clear, however, that the judgment binds the parties
beyond the geographic boundaries of my district.  See
Restatement of Judgments § 1 (1942).  And such an effect is
necessary here.  NeoPollard's iLottery system is currently used
in Michigan and New Hampshire, and its system "has been
configured according to state specifications for deployment" in
Virginia.  See Siver Decl., Doc. No. 10-2 at 2-3.  The Lottery

---

[16]    At oral argument, NeoPollard suggested that a declaratory
judgment may necessarily be universal in effect, because "the
idea that the law means something for the New Hampshire Lottery
Commission and something for NeoPollard and something different
for somebody else is not the way the criminal law in this
country works."  Doc. No. 69 at 52.  Of course, every time a
circuit split on an issue of criminal law arises, the criminal
law in this country works that way until the conflict is
resolved by the Supreme Court.  See, e.g., Johnson v. United
States, 135 S. Ct. 2551, 2560 (2015) (relying, in part, on
"numerous splits among the lower federal courts" to declare that
residual clause of Armed Career Criminal Act was
unconstitutionally void for vagueness) (collecting cases)
(internal quotations marks and citation omitted).

Commission's operations similarly extend beyond the State.  Its
servers are located in Vermont, with a disaster recovery
location in Ohio.

The State sells multi-jurisdictional games as a member of
the Tri-State Lotto Compact along with Maine and Vermont, sells
Powerball and Mega Millions through the Multi-State Lottery
Association, and is a member of a consortium of 25 states and
the District of Columbia that sells Lucky for Life.  See
McIntyre Decl., Doc. No. 2-2 at 5.  The multi-jurisdictional
games "involve up to 48 states and territories."  Id. at 6.  My
declaration thus binds the United States vis-à-vis NeoPollard
and the Lottery Commission everywhere the plaintiffs operate or
would be otherwise subject to prosecution.

Michigan, as an amicus, presents a somewhat more novel
theory for extending the declaratory judgment to non-parties on
behalf of the Lottery Commission.  The argument goes like this:
New Hampshire, as a member of the Multi-State Lottery
Association, benefits financially from the large scale of multi-
jurisdictional games such as Powerball.  If another state, such
as Michigan, shuttered its state lottery, then the overall
revenues of Powerball would decline.  If the revenues of
Powerball decline, then the share of Powerball revenue that New
Hampshire receives would decrease.  Therefore, because I should
ensure that New Hampshire not suffer any adverse financial

effect, "anything short of nationwide equitable relief is hollow." See Doc. No. 37 at 11.

New Hampshire has not advocated for this theory in its pleadings or at oral argument, and the issue is insufficiently developed factually and legally. For instance, no party has addressed whether extending relief to the Multi-State Lottery Association members would be relief for an "interested party seeking such declaration" as the Declaratory Judgment Act requires. See 28 U.S.C. § 2201(a). The Association is not a party to this litigation, and the Lottery Commission did not bring this case as a member of the Association. See Compl., Doc. No. 1. Finally, although the factual record specifies that the Commission recorded operating revenue of $337.8 million for the 2018 fiscal year, see McIntyre Decl., Doc. No. 2-2 at 2, it is bereft of information detailing the sources of that revenue, much less how another state's cessation of operations would affect its bottom line. In such a situation, granting relief on the Powerball-as-joint-venture theory would risk going "beyond the bounds of the complaint and the evidence in this case." Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 40 (1st Cir. 2006). I decline to take up Michigan's argument on the present record.[17]

---

[17]    Should the Lottery Commission wish to pursue such relief, however, I am willing to entertain its claim. Accordingly, I grant it 14 days from the issuance of this order to file an appropriate motion and supplement the record with adequate

### b.    APA Relief

The APA directs that a "reviewing court shall . . . hold
unlawful and set aside agency action, findings, and conclusions
found to be . . . not in accordance with law." 5 U.S.C.
§ 706(2)(A).  Notwithstanding the mandatory "shall," the First
Circuit has explained that a reviewing court "is not required
automatically to set aside [an] inadequately explained order."
Cent. Me. Power Co. v. FERC, 252 F.3d 34, 48 (1st Cir. 2001)
(citation omitted).  "Whether to do so rests in the sound
discretion of the reviewing court; and it depends inter alia on
the severity of the errors, the likelihood that they can be
mended without altering the order, and on the balance of
equities and public interest considerations."  Id. (citation
omitted).

When a court does not set aside an improper agency action,
the typical alternative response is an order remanding the case
for reconsideration by the agency in light of the court's
decision.  It is not clear, however, that I have the discretion
to remand instead of set aside an agency action where, as here,
the defect is substantive.  See Campanale & Sons, Inc. v. Evans,
311 F.3d 109, 127 (1st Cir. 2002) (Lynch, J., dissenting) ("It
is in the reviewing court's sound discretion to remand a rule to

---

factual and legal support.

an agency to mend procedural defects without overturning it in
its entirety.") (emphasis added) (citations omitted).  In any
event, this is an inappropriate case for remand.  The agency has
not disregarded procedural requirements or inadequately
explained its conclusions.  Cf. Harrington v. Chao, 280 F.3d 50,
60 (1st Cir. 2002) (remanding to provide agency "an opportunity
to better explain [its] position").  It has produced a capable,
but mistaken, legal opinion that no additional process can cure.
The proper remedy is to "set aside" the 2018 OLC Opinion.

### c.   Injunctive Relief

The Lottery Commission initially requested injunctive
relief in its complaint and motion for summary judgment.  In its
summary judgment briefing, however, the Commission "reserved the
right in its pleading to seek injunctive relief" in the event
the defendants did not comply with this order.  See Doc. No. 58
at 21.  The fact that no party currently requests injunctive
relief resolves the matter.  See Town of Chester v. Laroe
Estates, Inc., 137 S. Ct. 1645, 1651 (2017).

Injunctive relief would also be unnecessary.  An injunction
is "an extraordinary remedy never awarded as of right." Sindi
v. El-Moslimany, 896 F.3d 1, 29 (1st Cir. 2018) (quoting Winter
v. Nat. Res. Def. Council, 555 U.S. 7, 24 (2008)).  And it is
not appropriate where a party's interests will be adequately
protected by a declaratory judgment.  See Wooley v. Maynard, 430

U.S. 705, 711 (1977).  I have no reason to believe that the
Government will fail to respect my ruling that the Wire Act is
limited to sports gambling.  The judgment provides the Lottery
Commission and NeoPollard complete relief.  No more is needed.

### III.  CONCLUSION

In summary, I deny the Government's motion to dismiss for
lack of jurisdiction (Doc. No. 45) because the plaintiffs have
established standing, and the Government has not met its burden
to show that the case is moot.  I grant the plaintiffs' motions
for summary judgment (Doc. Nos. 2 & 10) and deny the
Government's cross-motion for summary judgment (Doc. No. 45).

I hereby declare that § 1084(a) of the Wire Act, 18 U.S.C.
§ 1084(a), applies only to transmissions related to bets or
wagers on a sporting event or contest.  The 2018 OLC Opinion is
set aside.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

June 3, 2019

cc:  Francis Charles Fredericks, Esq.
     Anthony Galdieri, Esq.
     Matthew D. McGill, Esq.
     Michael A. Delaney, Esq.
     Theodore B. Olson, Esq.
     Steven A. Myers, Esq.
     Matthew J. Glover, Esq.
     Alain J. Ifrah, Esq.
     Andrew J. Silver, Esq.
     Claude M. Stern, Esq.

Demetrio F. Aspiras, III, Esq.
Derek L. Shaffer, Esq.
Avram D. Frey, Esq.
Gillian A. Woolf, Esq.
Lawrence S. Lustberg, Esq.
Meghal J. Shah, Esq.
Thomas R. Valen, Esq.
Donald S. McGehee, Esq.
Mark G. Sands, Esq.
Melinda A. Leonard, Esq.
Peter S. Cowan, Esq.
A Michael Pratt, Esq.
Christopher B. Chuff, Esq.
Joanna J. Cline, Esq.
Patrick J. Queenan, Esq.
Robert R. Lucic, Esq.
Brian W. Barnes, Esq.
Charles J. Cooper, Esq.
David H. Thompson, Esq.
J. Joel Alicea, Esq.
Michael J. Tierney, Esq.
Nicole Frazer Reaves, Esq.
Stephen N. Zaharias, Esq.

**APPENDIX A**

87TH CONGRESS
1ST SESSION

# S. 1656

---

## IN THE SENATE OF THE UNITED STATES

APRIL 18, 1961

Mr. EASTLAND introduced the following bill; which was read twice and referred to the Committee on the Judiciary

---

1    SEC. 2. Chapter 50 of such title is amended by adding

2    thereto a new section 1084 as follows:

3    **"§ 1084. Transmission of wagering information; penalties**

4        "(a) Whoever leases, furnishes, or maintains any wire

5    communication facility with intent that it be used for the

6    transmission in interstate or foreign commerce of bets or

7    wagers, or information assisting in the placing of bets or

8    wagers, on any sporting event or contest, or knowingly uses

9    such facility for any such transmission, shall be fined not

10   more than $10,000 or imprisoned not more than two years,

11   or both.

**APPENDIX B**

87TH CONGRESS
1ST SESSION

# S. 1656

[Report No. 588]

---

## IN THE SENATE OF THE UNITED STATES

APRIL 18, 1961

Mr. EASTLAND introduced the following bill; which was read twice and referred to the Committee on the Judiciary

JULY 24, 1961

Reported by Mr. McCLELLAN (for Mr. EASTLAND), with amendments

[Omit the part struck through and insert the part printed in italic]

---

1     SEC. 2. Chapter 50 of such title is amended by adding
2 thereto a new section 1084 as follows:
3     "§ 1084. Transmission of wagering information; penalties
4     "(a) ~~Whoever leases, furnishes, or maintains any wire~~
5 ~~communication facility with intent that it be used for the~~
6 ~~transmission in interstate or foreign commerce of bets or~~
7 ~~wagers, or information assisting in the placing of bets or~~
8 ~~wagers on any sporting event or contest, or knowingly uses~~
9 ~~such facility for any such transmission,~~ *Whoever being*
10 *engaged in the business of betting or wagering knowingly uses*
11 *a wire communication facility for the transmission in inter-*
12 *state or foreign commerce of bets or wagers or information*
13 *assisting in the placing of bets or wagers on any sporting*
14 *event or contest, or for the transmission of a wire communi-*
15 *cation which entitles the recipient to receive money or credit*
16 *as a result of bets or wagers, or for information assisting in*
17 *the placing of bets or wagers,* shall be fined not more than
18 $10,000 or imprisoned not more than two years, or both.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

New Hampshire Lottery Commission

    v.

                           Case No. 19-cv-163-PB

US Attorney General, et al


<u>JUDGMENT</u>


    In accordance with the Memorandum and Order by Judge Paul Barbadoro dated June 3, 2019, judgment is hereby entered.

    The prevailing party may recover costs consistent with Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.


                           By the Court:


                            /s/Tracy A. Uhrin
                           Tracy A. Uhrin
                           Chief Deputy Clerk


Date: June 20, 2019

cc: Counsel of Record